**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |  |
|---|---|---|
| MOUNTAIN ISLAND DAY | ) | |
| COMMUNITY CHARTER SCHOOL | ) | |
| d/b/a JACKSON DAY SCHOOL and | ) | |
| MARINER FOUNDATION, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | Civil Action No. |
| v. | ) | |
|  | ) | Jury Trial Demanded |
| INSPIRE PERFORMING ARTS | ) | |
| COMPANY, LLC, MEGAN ELIZABETH | ) | |
| ZUGELDER MAY and LISA LEWIS, | ) | |
|  | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiffs MOUNTAIN ISLAND DAY COMMUNITY CHARTER SCHOOL d/b/a JACKSON DAY SCHOOL and MARINER FOUNDATION, for their complaint against Defendants INSPIRE PERFORMING ARTS COMPANY, LLC, MEGAN ELIZABETH ZUGELDER MAY, and LISA LEWIS, allege on personal knowledge as to their actions, and upon information and belief as to the actions, of Defendants, as follows:

## NATURE OF THE ACTION

1.      This action arises out of acts by Defendants MEGAN ELIZABETH ZUGELDER MAY, and LISA LEWIS in which they embezzled and misappropriated funds from Mariner Foundation while they were employed by Jackson Day School as dance teachers to provide instruction during school hours and paid an additional stipend to run Mariner Foundation's afterschool, extracurricular Inspire Dance Team (or Inspire Dance Company) on school grounds (hereinafter referred to as "Inspire Dance Team"). The school applied with the U.S. Patent and Trademark Office to register the trademarks "Inspire Dance Team" and "Inspire Dance Company," and those applications are pending.

2.     Specifically, MAY and LEWIS directed parents of students in the school, whose children participated with the Inspire Dance Team, to pay MAY and LEWIS for the dance team's tuition, fundraisers, costumes, and competition fees into the personal bank accounts of MAY, LEWIS, and others with peer-to-peer payment services – such as Venmo, Zelle, and Cash App – rather than to pay Mariner Foundation, as directed by Plaintiffs. MAY and LEWIS kept the funds that were transferred into their personal bank accounts through the aforementioned peer-to-peer payment services and did not transfer the funds to Mariner Foundation.

3.     Ultimately, in June 2024, while still under contract with the school, MAY and LEWIS left the school and promptly solicited parents of students in the school, whose children participated with the Inspire Dance Team, to join the competing dance team of MAY and LEWIS, deceptively called "Inspire Performing Arts Company." Their solicitation of parents of students in the school, whose children participated with the Inspire Dance Team, violated their employment agreements prohibiting such solicitation.

4.     As it turns out, unbeknownst to Jackson Day School and Mariner Foundation at the time, MAY had formed a limited liability company, Defendant INSPIRE PERFORMING ARTS COMPANY, LLC, to ostensibly prepare to solicit parents of students at the school whose children participate with the Inspire Dance Team. Beginning in or about June 2024, Inspire Performing Arts Company began to solicit parents of students at the school whose children participate with the Inspire Dance Team and has, in multiple ways, intentionally and without authorization used images and video of the Inspire Dance Team to advertise and promote the dance business Inspire Performing Arts Company.

5.     For example, Inspire Performing Arts Company's website at https://www.inspireperformingartscompany.com/gallery displays the following images of the Inspire Dance Team to advertise and promote the dance business Inspire Performing Arts Company:





















6







Case 3:24-cv-00779   Document 1   Filed 08/27/24   Page 7 of 35

6.     In addition to intentionally and without authorization posting images of the Inspire Dance Team on its website to advertise and promote its dance business, Inspire Performing Arts Company also posted images and videos on its Facebook, Instagram, and YouTube social media platforms:

     a. https://www.facebook.com/share/S3vTFAjyD9bt5Eax/?mibextid=LQQJ4d

     b. https://www.instagram.com/INSPIRE_PAC_CLT/

     c. https://www.youtube.com/playlist?list=PLAPjZkV9JkZEWCE2UImDFMijARG GTlSCz

7.     In each such instance, images and/or videos were used to advertise and promote the business and services of Inspire Performing Arts Company using images and/or videos of the Inspire Dance Team.

8.     In each such instance, images and/or videos of the Inspire Dance Team were used in a manner that falsely and/or misleadingly indicated that those students, as depicted in the images and/or videos, were participants of Inspire Performing Arts Company in those images and/or videos.

9.     In each such instance, images and/or videos of the Inspire Dance Team were used in a manner that falsely and/or misleadingly connoted Plaintiffs' approval or endorsement of Inspire Performing Arts Company.

10.     Plaintiffs have not approved or endorsed, nor have Plaintiffs ever intended to appear to approve or endorse, Inspire Performing Arts Company's business or its services.

11.     Subsequent to Inspire Performing Arts Company's publication of the aforementioned false and misleading photographs, counsel for Plaintiffs reached out to Defendants MAY and LEWIS, informed them of the unlawful nature of their solicitations of parents of the students who participated with the Inspire Dance Team and of the unlawful nature

of Inspire Performing Arts Company's usage of images and videos of the Inspire Dance Team, and demanded that they, among other things, (1) cease and desist any and all contact with families associated with Inspire Dance Team, and (2) cease and desist using any information, videos, pictures, or testimonials of the Inspire Dance Team.

12. However, Defendants have not ceased from soliciting families associated with the Inspire Dance Team and have not ceased using images, videos, and other information of the Inspire Dance Team to advertise and promote Inspire Performing Arts Company.

13. As a consequence, Plaintiffs find it necessary to seek this Court's intervention to curtail Defendants' unlawful activities and to obtain the legal and equitable remedies to which Plaintiffs are entitled.

14. As such, Plaintiffs bring this action for: violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), concerning trademark infringement and unfair competition; (2) violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), concerning false advertising; (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq*.; (4) breach of contract under North Carolina common law; (5) breach of the implied covenant of good faith and fair dealing under North Carolina common law; (6) conversion under North Carolina common law; and (7) unjust enrichment under North Carolina common law.

## PARTIES

15. Plaintiffs MOUNTAIN ISLAND DAY COMMUNITY CHARTER SCHOOL d/b/a JACKSON DAY SCHOOL and MARINER FOUNDATION are North Carolina nonprofit corporations doing business in Mecklenburg County, North Carolina.

16. Defendant INSPIRE PERFORMING ARTS COMPANY, LLC is a North Carolina limited liability company doing business in Mecklenburg County, North Carolina. It operates

9

Inspire Performing Arts Company.

17.     Upon information and belief, Defendants MEGAN ELIZABETH ZUGELDER MAY and LISA LEWIS are individuals residing in Mecklenburg County, North Carolina. They are the co-founders and co-directors of Inspire Performing Arts Company.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1367.

19.     This Court has personal jurisdiction over Defendants because Defendants are residents of North Carolina, have committed tortious acts within North Carolina, have transacted business within North Carolina, and have otherwise made or established contacts within North Carolina sufficient to permit the exercise of personal jurisdiction by this Court.

20.     Venue is proper within this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant INSPIRE PERFORMING ARTS COMPANY, LLC resides, and, based upon information and belief, the other defendants reside, in this judicial district and Defendants are all residents of North Carolina, and a substantial part of the events and injury giving rise to Plaintiffs' claims has occurred within this judicial district.

## DEFENDANTS' UNLAWFUL ACTIVITIES

21.     From its inception in 2019 through September 2022, parents of students at Jackson Day School who participated on the Inspire Dance Team paid for that extracurricular activity by check made out to "Mariner Foundation" or by paying through Mariner Foundation's account with Square, a peer-to-peer payment service.

22.     In September 2022, during the course of reviewing budget reports, Tammy Winstead, who serves a Dean of Operations for the school and who also is a Board member of Mariner Foundation, noticed that an account for Mariner Foundation with Zelle, a different

peer-to-peer payment service, had been established. Ms. Winstead contacted Karen Lyons, the school's financial secretary, to inquire about the Zelle account that had been established without Ms. Winstead's approval. Ms. Lyons explained that MAY and LEWIS had requested the creation of a Zelle account because the processing fees were less expensive than Square. Ms. Winstead examined the processing fees, agreed that Zelle was less expensive than Square, and permitted MAY and LEWIS to continue using Mariner Foundation's Zelle account to collect Inspire Dance Team payments. Jackson Day School terminated Ms. Lyons' employment in September 2022.

23.      In November 2022, Kim Coppolo, Jackson Day School's new financial secretary, discovered that, without Ms. Winstead's authorization, Ms. Lyons had provided LEWIS access to the Zelle account to enable LEWIS to see the payments and ensure that parents had made timely payments. That way, Ms. Lyons would not have to print reports for LEWIS. Ms. Coppolo also discovered that, without authority, LEWIS was using Mariner Foundation's Zelle account to make payments to dance instructors used by the Inspire Dance Team. LEWIS was supposed to submit a request for payment to Ms. Coppolo who, in turn, would obtain Ms. Winstead's approval and, if granted, would then make payment to the vendor. As a result, Ms. Coppolo told LEWIS she could not pay dance instructor with Zelle and, instead, would have to route payment requests through Mariner Foundation's bill payment platform called "BILL."

24.      When LEWIS responded via email, pushing back against the idea of using BILL instead of Zelle and copying MAY, Quartney Beachy of Mariner Foundation's accounting firm responded to LEWIS and MAY that any service provided by a dance instructor would go through Ms. Winstead and BILL in order to be handled the same way as any other vendor. Ms. Beachy explained that, after an invoice from a dance instructor is approved by Ms. Winstead, payment is processed through Bill, which transmits payment to the instructor's bank account.

Nigel Bearman, Ms. Beachy's supervisor responded via email to LEWIS and MAY that the appropriate controls must be in place to ensure that all payments are documented and made with the right approvals. The response from LEWIS, which copied MAY, was thankfulness for "help and guidance with my questions." LEWIS further stated "We certainly can work as a team to make sure all is in place, thank you!

25.     In January 2023, Ms. Winstead attempted to block access to Mariner Foundation's bank account to ensure that LEWIS and MAY did not have access to the account.

26.     In June 2023, it appeared to Ms. Winstead that LEWIS somehow gained access to Mariner Foundation's bank account.

27.     In July 2023, Jill McQuay, Jackson Day School's new financial secretary and Ms. Winstead went to the bank to change logins and passwords to ensure the Mariner Foundation's account was secure and to ensure that LEWIS and MAY did not have access to the account. Ms. Winstead also ordered new checks and cards. Ms. McQuay and Ms. Winstead also blocked the ability of LEWIS and MAY to transfer payments out of Mariner Foundation's Zelle account to dance instructors.

28.     In November 2023, LEWIS and MAY sent a text message to parents of students who participated on the Inspire Dance Team that parents should make payments to MAY's personal Zelle account or to the personal Zelle account of another dance instructor. Ms. Winstead met with LEWIS in person to discuss the text message and to remind her that they had had many discussions that all payments are to be made to Mariner Foundation by check or through BILL, and not to be made to dance instructors. LEWIS assured Ms. Winstead that LEWIS and MAY would correct the error.

29.     In December 2023, payments were still being made by parents to dance instructors, rather than to Mariner Foundation. Ms. Winstead sent LEWIS a text message stating

that she needed to speak with LEWIS about billing. When Ms. Winstead spoke to LEWIS, Ms. Winstead again explained that payments from parents must be made to Mariner Foundation, and not to MAY's bank account or any other dance instructor's bank account. LEWIS confessed to Ms. Winstead that 17 families had each sent $350 to MAY's personal bank account.

30.     Also in December 2023, Ms. Winstead sent LEWIS another text message to again direct LEWIS and MAY that (1) parents are to make payments to Mariner Foundation via check or Mariner Foundation's Zelle account, and (2) dance instructors are paid by Mariner Foundation through BILL. Ms. Winstead stated that there was over $20,000 in undocumented funds that had gone to MAY, and she demanded that LEWIS and MAY immediately transmit those funds to Mariner Foundation. Ms. Winstead also directed that LEWIS (1) confirm that payments from parents are being paid directly to Mariner Foundation, (2) send a communication to parents to explain that payments from parents must be paid directly to Mariner Foundation, and (3) provide Ms. Winstead a copy of the communication to parents. In response, LEWIS sent a text message to Ms. Winstead stating that LEWIS and MAY are using BILL to pay dance instructors but denying that LEWIS had ever communicated with Ms. Winstead about the requirement that parents pay Mariner Foundation, and not MAY, falsely stating that the Inspire Dance Team was a "separate entity" from Mariner Foundation.

31.     In March 2024, Ms. Winstead received a text message from MAY directing Ms. Winstead to send MAY's payment to MAY's Zelle account and another dance instructor's payment to that individual's Zelle account. In response, Ms. Winstead sent a text message to LEWIS letting her know that Ms. Winstead had already discussed with LEWIS that such payments to dance instructors' Zelle accounts cannot be made because the payments must be made through BILL.

32.     In or about March 2024, Ms. Winstead and Adam Hill with the school's human

resource office met with LEWIS and MAY in person and Ken Holt, the school board's treasurer, participated by phone. Mr. Holt informed LEWIS and MAY that he knew Ms. Winstead had addressed with LEWIS and MAY the concerns with improper payments being received by MAY from parents and improper payments being made to dance instructors by LEWIS and MAY. Mr. Holt told LEWIS and MAY that the next payment directed to their personal accounts would result in their termination of employment.

33.    In response to Mr. Holt, LEWIS stated that LEWIS and MAY would move Mariner Foundation's afterschool, extracurricular Inspire Dance Team off school property and continue their practice of parents paying MAY directly. Mr. Holt reminded LEWIS and MAY that they were employees of Jackson Day School and directed them not to attempt to take Mariner Foundation's Inspire Dance Team away.

34.    At the conclusion of the meeting, LEWIS and MAY stated that payments from parents would go to Mariner Foundation. However, very few payments from parents subsequently went to Mariner Foundation. An estimated $50,000 was embezzled and misappropriated by LEWIS and MAY during the 2023-2024 school year.

35.    Ultimately, in June 2024, while still under contract with the school, MAY and LEWIS left the school and promptly solicited parents of students in the school, whose children participated in Mariner Foundation's afterschool, extracurricular Inspire Dance Team, to join the competing dance team of MAY and LEWIS called "Inspire Performing Arts Company." Their solicitation of parents of students in the school, whose children participated in Mariner Foundation's afterschool, extracurricular Inspire Dance Team, violated their employment agreements prohibiting such solicitation.

36.    In or about May 2023 and November 2023, MAY and LEWIS, respectively, had each entered into employment agreements to be teachers with Jackson Day School for the 2023-

2024 school year, described as beginning in August 2023 and November 2023, respectively, and going through June 2024. In the employment agreements, the school agreed to pay annual compensation to MAY and LEWIS in return for their services and certain promises made within the agreements.

37.    One such promise in the employment agreements was that, in the event employment is terminated by either the school or employee, MAY and LEWIS would not solicit the families and students of the school with whom MAY and LEWIS had developed relationships through resources provided by the school, such as the Inspire Dance Team: "In the event that employment is terminated either by the school or employee, all communication, relations, and activity with families and students whose relationships were initiated with the employee through the resources of the school must cease for the benefit of the students, the new teacher, and the school. Any attempts to communicate using resources initiated by the school or relationships initiated in the school may result in legal action against the employee."

38.    As it turns out, unbeknownst to Plaintiffs at the time, MAY had formed a limited liability company, Defendant INSPIRE PERFORMING ARTS COMPANY, LLC, to ostensibly prepare to solicit parents of students at the school whose children participate with the Inspire Dance Team.

39.    Beginning in or about June 2024, Inspire Performing Arts Company began to solicit parents of students at the school whose children participate with the Inspire Dance Team. On or about June 26, 2024, MAY and LEWIS sent an email from "Inspire Performing Arts Company" with the email address inspirepac.clt@gmail.com to the parents of students at the school whose children participate with the Inspire Dance Team. In the email, MAY and LEWIS provided, among other things, a deceptive announcement about the Inspire Dance Team's transition to an "independent organization":

*Inspire is thrilled to announce its next adventure! Inspire Performing Arts Company will be opening its doors as an independent organization in a studio that will create a trajectory of growth by sharing our passion for dance and the performing arts with the Charlotte community and beyond!! To stay up to date, please follow our socials (information shared below) and keep an eye on your email over the next few weeks. If you have questions or would like more information regarding Inspire Performing Arts Company and its offerings please reach out. We are so excited to start this journey in God's plan and we hope you will continue with us for the greatness ahead. Let's go INSPIRE!*

40.     The June 26, 2024 email from MAY and LEWIS was signed as follows:

*Megan Zugelder May*
*Lisa Lewis*
*& the Inspire Coaching Team [blue heart emoji]*

41.     Defendants have, in multiple ways, intentionally and without authorization used images and video of the Inspire Dance Team to advertise and promote the dance business Inspire Performing Arts Company.

42.     For example, Inspire Performing Arts Company's website at https://www.inspireperformingartscompany.com/gallery displays images of the Inspire Dance Team to advertise and promote the dance business Inspire Performing Arts Company.

43.     In addition to intentionally and without authorization posting images of the Inspire Dance Team to advertise and promote its dance business on its website, Inspire Performing Arts Company also posts images and videos of the Inspire Dance Team on its Facebook, Instagram, and YouTube social media platforms:

a.     https://www.facebook.com/share/S3vTFAjyD9bt5Eax/?mibextid=LQQJ4d

b.     https://www.instagram.com/INSPIRE_PAC_CLT/

c.     https://www.youtube.com/playlist?list=PLAPjZkV9JkZEWCE2UImDFMijARGGTlSCz

44.     Defendant's actions as described herein have in fact harmed each of the Plaintiffs.

## COUNT I

**VIOLATION OF SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

45.     Plaintiffs repeat and reallege the contents of Paragraphs 1-44 as though fully set forth herein.

46.     Without the consent or authorization of Plaintiffs, Defendants have adopted and are using Defendants' infringing Inspire Performing Arts Company designation, which designation is confusingly similar to Plaintiffs' "Inspire Dance Team" and "Inspire Dance Company" marks, in connection with dance classes and teams.

47.     Defendants are using their Defendants' infringing Inspire Performing Arts Company designation in a manner that damages Plaintiffs and is likely to cause confusion, mistake and deception as to the source or origin of the goods and services offered by Defendants, giving the impression that these goods and services offered by Defendants are authorized or offered by, or affiliated with Plaintiffs, when in fact they are not.

48.     Defendants' use of Defendants' infringing Inspire Performing Arts Company designation also causes and is likely to cause reverse confusion, in which, through Defendants' substantial market power and breadth of advertising and marketing, consumers are likely to believe that Plaintiffs' senior use of Plaintiffs' Inspire Dance Team and Inspire Dance Company marks is confusing, when in fact Defendants are the junior user and infringing Plaintiffs' rights in Plaintiffs' Inspire Dance Team and Inspire Dance Company.

49.     Defendants' continued use of Defendants' infringing Inspire Performing Arts Company designation is likely to strip Plaintiffs of the goodwill they have built in Plaintiffs' Inspire Dance Team and Inspire Dance Company marks and cause consumers to appropriate that goodwill to Defendants, despite Defendants being the junior and infringing users.

50.     Defendants offer and sell their goods and services under Defendants' infringing Inspire Performing Arts Company designation online, which is an identical trade channel employed by Plaintiffs to offer for sale and sell Plaintiffs' goods and services in connection with Plaintiffs' Inspire Dance Team and Inspire Dance Company marks.

51.     Defendants have no present intention of terminating their infringing activities complained of herein, but, on the contrary, Defendants' infringement is continuing, and Defendants intend to continue the acts complained of herein.

52.     Plaintiffs have placed Defendants on notice of Plaintiffs' rights in Plaintiffs' Inspire Dance Team and Inspire Dance Company marks, but Defendants have refused to cease their infringing acts, such that Defendants' acts are willful.

53.     Defendants are willfully infringing Plaintiffs' Inspire Dance Team and Inspire Dance Company marks.

54.     Defendants' adoption and use of Defendants' infringing Inspire Performing Arts Company designation violates Plaintiffs' rights in Plaintiffs' Inspire Dance Team and Inspire Dance Company marks, causes and is likely to cause consumers to be confused, misled, mistaken and deceived about the origin of the goods and services offered and sold under Defendants' infringing Inspire Performing Arts Company designation, to Plaintiff's harm.

55.     Plaintiffs have been, and will continue to be, damaged by Defendants' willful trademark infringement in a manner and an amount that cannot be fully measured in economic terms, for which there is no adequate remedy at law.

56.     Defendants' use of Defendants' infringing Inspire Performing Arts Company designation represents a false designation of origin, as consumers are likely to associate Defendants' infringing Inspire Performing Arts Company designation used in connection with Defendants' dance classes and teams with Plaintiffs and Plaintiffs' brand of dance classes and

teams offered for sale and sold in connection with Plaintiffs' senior Inspire Dance Team and Inspire Dance Company marks.

57.  Due to the highly similar nature and geographic proximity of the services offered by Defendants in connection with Defendants' infringing Inspire Performing Arts Company designation and the goods and services offered for sale and sold by Plaintiffs in connection with Plaintiff's senior Inspire Dance Team and Inspire Dance Company marks, consumers will believe that the services offered for sale and sold under Defendants' infringing Inspire Performing Arts Company designation, which is junior to Plaintiffs' Inspire Dance Team and Inspire Dance Company marks, are associated with, sponsored and/or endorsed by Plaintiffs, when in fact they are not.

58.  Defendants' use of Defendants' infringing Inspire Performing Arts Company designation diminishes the connection between Plaintiffs' Inspire Dance Team and Inspire Dance Company marks as the single source for Plaintiffs' goods and services offered for sale and sold in connection with Plaintiffs' Inspire Dance Team and Inspire Dance Company marks.  As such, Plaintiffs' reputation has been and will continue to be harmed irreparably by Defendants' activities, which has caused and will continue to cause harm to the consuming public, and for which there is no adequate remedy at law.

59.  Plaintiffs have not granted any license or permission to Defendants to use Defendants' infringing Inspire Performing Arts Company designation, and Defendants' acts create and further the likelihood that the public will be confused as to the sponsorship, source, affiliation or association of the goods and services offered for sale and sold by Defendants.

60.  Defendants' use of Defendants' infringing Inspire Performing Arts Company designation and/or its association with Plaintiffs' Inspire Dance Team and Inspire Dance Company marks constitutes a false designation of origin and/or reverse confusion, as consumers

19

are likely to associate Plaintiffs' goods and services offered for sale and sold with Plaintiffs' Inspire Dance Team and Inspire Dance Company marks with Defendants.

61.     Defendants' adoption and use of their infringing Inspire Performing Arts Company designation unfairly capitalizes on the goodwill associated with Plaintiffs' Inspire Dance Team and Inspire Dance Company marks, which goodwill Plaintiffs have generated through consistent and continuous use for several years.

62.     By adopting a mark that is so similar to Plaintiffs' Inspire Dance Team and Inspire Dance Company marks, Defendants are unfairly competing with Plaintiffs by relying upon goodwill built by Plaintiffs.

63.     As a result of Defendants' improper conduct and Defendants' profits from such conduct, Plaintiffs are entitled to actual damages from each Defendant that Plaintiffs have sustained and may sustain and/or the profits unfairly gained by Defendants, the amount of which is to be proven at trial and is to be enhanced up to three times that amount as the Court finds just, pursuant to 15 U.S.C. § 1117.

64.     Defendants have acted knowingly, willfully and deliberately, and such actions constitute an exceptional case thereby justifying an award of attorneys' fees to Plaintiffs pursuant to 15 U.S.C. § 1117.

## <u>COUNT II</u>

**VIOLATION OF SECTION 43(a)(1)(B) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)**
**FALSE ADVERTISING**
**(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

65.     Plaintiffs repeat and reallege the contents of Paragraphs 1-64 as though fully set forth herein.

66.     Pursuant to Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B):

*"Any person who, on or in connection with any goods or services…uses in commerce any word, term, name, symbol, or device, or any combination thereof…*

20

*false or misdescription of fact, or false or misleading representation of fact, which… in commercial advertising or promotion, misrepresents the nature, characteristics, qualities…. of his or her or another person's goods, services, or commercial activities…. shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."*

67.     Defendants have used in commerce, *inter alia*, certain devices, namely, modified photographs and videos, including, without limitation, photographs and videos of the Inspire Dance Team.

68.     Defendants' uses of, *inter alia*, the photographs and videos of the Inspire Dance Team, were in commercial advertising and promotion of Defendant INSPIRE PERFORMING ARTS COMPANY, LLC and dance services, and misrepresented the nature, characteristics and qualities of Defendant INSPIRE PERFORMING ARTS COMPANY, LLC's own goods, services and commercial activities by falsely conveying that the Inspire Dance Team is Inspire Performing Arts Company and/or that Plaintiffs support, endorse, sponsor or otherwise are affiliated with Inspire Performing Arts Company.

69.     Plaintiffs believe that they have been damaged, and will continue to be damaged, if Inspire Dance Team is associated with Defendant INSPIRE PERFORMING ARTS COMPANY, LLC and its business.

70.     Defendants' acts constitute false advertising as prohibited by Section 43(a)(1)(B) of the Lanham Act by using photographs and video of the Inspire Dance Team, and Defendants have engaged in multiple violations of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

71.     Moreover, Defendants' acts constitute multiple willful violations of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as Defendants knowingly used, without the approval, authorization, license or permission of Plaintiffs, images and videos displaying the Inspire Dance Team, and which images and videos contain misrepresentations of

the nature, characteristics and qualities of Defendant INSPIRE PERFORMING ARTS COMPANY, LLC's business.

72.    Plaintiffs believe that, by using photographs and videos of the Inspire Dance Team, Defendants have received ill-gotten revenues and profits and, as such, Defendants have unlawfully deprived the Foundation of a fair share of the revenues and profits gleaned from Defendants' unlawful activities that would be due the Foundation if the commercial use of the photographs and videos, in fact, had been authorized.

73.    The aforesaid acts of Defendants have also caused and, unless enjoined by this Court, will continue to cause, irreparable damage, loss and injury to the Foundation in the form of lost revenue from families paying Inspire Performing Arts Company rather than the Foundation for the Inspire Dance Team and for the lessening of goodwill associated with the Inspire Dance Team.

## COUNT III

**VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. Gen. Stat. §§ 75-1.1, *et seq.*
(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

74.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-73 as if fully set forth herein.

75.    Defendant's activities as described above:

(a)    Are immoral, unethical, oppressive, unscrupulous, and offend the ethos of the marketplace;

(b)    Constitute an unfair method of competition in or affecting commerce, or

(c)    Are unfair and deceptive acts or practices in and affecting commerce; and

(d)    Cause a likelihood of confusion or misunderstanding as to the sponsorship, approval, or association of Defendants' business and services.

22

76.     The aforesaid acts of Defendants have also caused and, unless enjoined by this Court, will continue to cause, irreparable damage, loss and injury to the Foundation in the form of lost revenue from families paying Inspire Performing Arts Company rather than the Foundation for the Inspire Dance Team and for the lessening of goodwill associated with the Impact Dance Team.

77.     Plaintiffs have no adequate remedy at law for Defendants' activities in violation of N.C. Gen. Stat. § 75-1.1, and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to Plaintiffs' goodwill and reputation.

78.     Defendants' reckless disregard and purposeful violations of the North Carolina Unfair and Deceptive Trade Practices Act warrants an award to Plaintiffs of compensatory damages and punitive damages in addition to all other legal and equitable remedies appropriate to redress Defendant's unfair and/or deceptive trade practices.

## COUNT IV

### BREACH OF CONTRACT
### (BY JACKSON DAY SCHOOL AGAINST MAY)

79.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-78 as if fully set forth herein.

80.     On or about May 30, 2023, MAY signed an employment agreement to be a teacher with Jackson Day School for the 2023-2024 school year, described as beginning in August 2023 and going through June 2024. In the employment agreement, the school agreed to pay annual compensation to MAY in return for her services and certain promises made within the agreements. The employment agreement was a valid contract.

81.     One such promise in the employment agreement was that MAY would abide by "the school's rules, regulations, policies and practices as amended."

82.     Another promise in the employment agreement was that, in the event employment is

23

terminated by either the school or employee, MAY would not solicit the families and students of the school with whom MAY had developed relationships through resources provided by the school: "In the event that employment is terminated either by the school or employee, all communication, relations, and activity with families and students whose relationships were initiated with the employee through the resources of the school must cease for the benefit of the students, the new teacher, and the school. Any attempts to communicate using resources initiated by the school or relationships initiated in the school may result in legal action against the employee."

83.    The school paid MAY the agreed-upon compensation and otherwise complied with the terms of the employment agreement.

84.    From in or about September 2022 through in or about June 2024, MAY materially breached the employment agreement by:

      a.     Accepting payments from parents directly into the personal peer-to-peer payment service accounts and bank accounts of MAY and/or others and not transmitting all those funds to Mariner Foundation;

      b.     Paying dance instructors using peer-to-peer payment service accounts and bank accounts of MAY and/or others rather than routing payments to dance instructors through Mariner Foundation;

      c.     Soliciting parents of students at the school who participated with the Inspire Dance Team through June 2024 to offer dance-related services of Inspire Performing Arts Company.

85.    MAY's breach of the employment agreement was material because Mariner Foundation suffered financial harm as a result of MAY's actions, including but not limited to actual damages equating to the loss of payments that were directed into the personal peer-to-peer

payment service accounts and bank accounts of MAY and/or others and not transmitting all those funds to Mariner Foundation, as well as the revenue MAY derived from soliciting parents of students at the school who participated with the Inspire Dance Team, and consequential damages incurred as a result of MAY's unlawful actions.

**COUNT V**

**BREACH OF CONTRACT**
**(BY JACKSON DAY SCHOOL AGAINST LEWIS)**

86.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-85 as if fully set forth herein.

87.   On or about May 30, 2023, LEWIS signed an employment agreement to be a teacher with Jackson Day School for the 2023-2024 school year, described as beginning in August 2023 and going through June 2024. In the employment agreement, the school agreed to pay annual compensation to LEWIS in return for her services and certain promises made within the agreements. The employment agreement was a valid contract.

88.     One such promise in the employment agreement was that LEWIS would abide by "the school's rules, regulations, policies and practices as amended."

89.     Another promise in the employment agreement was that, in the event employment is terminated by either the school or employee, LEWIS would not solicit the families and students of the school with whom LEWIS had developed relationships through resources provided by the school: "In the event that employment is terminated either by the school or employee, all communication, relations, and activity with families and students whose relationships were initiated with the employee through the resources of the school must cease for the benefit of the students, the new teacher, and the school. Any attempts to communicate using resources initiated by the school or relationships initiated in the school may result in legal action against the employee."

90.     The school paid LEWIS the agreed-upon compensation and otherwise complied with the terms of the employment agreement.

91.     From in or about September 2022 through in or about June 2024, LEWIS materially breached the employment agreement by:

a.   Accepting payments from parents directly into the personal peer-to-peer payment service accounts and bank accounts of LEWIS and/or others and not transmitting all those funds to Mariner Foundation;

b.   Paying dance instructors using peer-to-peer payment service accounts and bank accounts of LEWIS and/or others rather than routing payments to dance instructors through Mariner Foundation;

c.   Soliciting parents of students at the school who participated with the Inspire Dance Team through June 2024 to offer dance-related services of Inspire Performing Arts Company.

92.     LEWIS's breach of the employment agreement was material because Mariner Foundation suffered financial harm as a result of LEWIS's actions, including but not limited to actual damages equating to the loss of payments that were directed into the personal peer-to-peer payment service accounts and bank accounts of LEWIS and/or others and not transmitting all those funds to Mariner Foundation, as well as the revenue LEWIS derived from soliciting parents of students at the school who participated with the Inspire Dance Team, and consequential damages incurred as a result of LEWIS's unlawful actions.

## COUNT VI

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (BY JACKSON DAY SCHOOL AGAINST MAY)

93.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-92 as if fully set forth herein.

26

94.     On or about May 30, 2023, MAY signed an employment agreement to be a teacher with Jackson Day School for the 2023-2024 school year, described as beginning in August 2023 and going through June 2024. In the employment agreement, the school agreed to pay annual compensation to MAY in return for her services and certain promises made within the agreements. The employment agreement was a valid contract.

95.     One such promise in the employment agreement was that MAY would abide by "the school's rules, regulations, policies and practices as amended."

96.     Another promise in the employment agreement was that, in the event employment is terminated by either the school or employee, MAY would not solicit the families and students of the school with whom MAY had developed relationships through resources provided by the school: "In the event that employment is terminated either by the school or employee, all communication, relations, and activity with families and students whose relationships were initiated with the employee through the resources of the school must cease for the benefit of the students, the new teacher, and the school. Any attempts to communicate using resources initiated by the school or relationships initiated in the school may result in legal action against the employee."

97.     The school paid MAY the agreed-upon compensation and otherwise complied with the terms of the employment agreement.

98.     From in or about September 2022 through in or about June 2024, MAY breached an implied promise to act reasonably and not arbitrarily or irrationally in exercising discretion relating to its performance of the employment agreement by:

        a.   Accepting payments from parents directly into the personal peer-to-peer payment service accounts and bank accounts of MAY and/or others and not transmitting all those funds to Mariner Foundation;

b.   Paying dance instructors using peer-to-peer payment service accounts and bank accounts of MAY and/or others rather than routing payments to dance instructors through Mariner Foundation;

c.   Soliciting parents of students at the school who participated with the Inspire Dance Team through June 2024 to offer dance-related services of Inspire Performing Arts Company.

99.   MAY's breach of an implied promise to act reasonably and not arbitrarily or irrationally in exercising discretion relating to its performance of the employment agreement was material because Mariner Foundation suffered financial harm as a result of MAY's actions, including but not limited to actual damages equating to the loss of payments that were directed into the personal peer-to-peer payment service accounts and bank accounts of MAY and/or others and not transmitting all those funds to Mariner Foundation, as well as the revenue MAY derived from soliciting parents of students at the school who participated with the Inspire Dance Team, and consequential damages incurred as a result of MAY's unlawful actions.

## COUNT VII

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (BY JACKSON DAY SCHOOL AGAINST LEWIS)

100.   Plaintiffs repeat and reallege the allegations of Paragraphs 1-99 as if fully set forth herein.

101.   On or about May 30, 2023, LEWIS signed an employment agreement to be a teacher with Jackson Day School for the 2023-2024 school year, described as beginning in August 2023 and going through June 2024. In the employment agreement, the school agreed to pay annual compensation to LEWIS in return for her services and certain promises made within the agreements. The employment agreement was a valid contract.

102.   One such promise in the employment agreement was that LEWIS would abide

28

by "the school's rules, regulations, policies and practices as amended."

103. Another promise in the employment agreement was that, in the event employment is terminated by either the school or employee, LEWIS would not solicit the families and students of the school with whom LEWIS had developed relationships through resources provided by the school: "In the event that employment is terminated either by the school or employee, all communication, relations, and activity with families and students whose relationships were initiated with the employee through the resources of the school must cease for the benefit of the students, the new teacher, and the school. Any attempts to communicate using resources initiated by the school or relationships initiated in the school may result in legal action against the employee."

104. The school paid LEWIS the agreed-upon compensation and otherwise complied with the terms of the employment agreement.

105. From in or about September 2022 through in or about June 2024, LEWIS breached an implied promise to act reasonably and not arbitrarily or irrationally in exercising discretion relating to its performance of the employment agreement by:

    a. Accepting payments from parents directly into the personal peer-to-peer payment service accounts and bank accounts of LEWIS and/or others and not transmitting all those funds to Mariner Foundation;

    b. Paying dance instructors using peer-to-peer payment service accounts and bank accounts of LEWIS and/or others rather than routing payments to dance instructors through Mariner Foundation;

    c. Soliciting parents of students at the school who participated with the Inspire Dance Team through June 2024 to offer dance-related services of Inspire Performing Arts Company.

106. LEWIS's breach of an implied promise to act reasonably and not arbitrarily or irrationally in exercising discretion relating to its performance of the employment agreement was material because Mariner Foundation suffered financial harm as a result of LEWIS's actions, including but not limited to actual damages equating to the loss of payments that were directed into the personal peer-to-peer payment service accounts and bank accounts of LEWIS and/or others and not transmitting all those funds to Mariner Foundation, as well as the revenue LEWIS derived from soliciting parents of students at the school who participated with the Inspire Dance Team, and consequential damages incurred as a result of LEWIS's unlawful actions.

<u>**COUNT VIII**</u>

**CONVERSION**
**(BY MARINER FOUNDATION AGAINST MAY AND LEWIS)**

107. Plaintiffs repeat and reallege the allegations of Paragraphs 1-106 as if fully set forth herein.

108. From in or about September 2022 through in or about June 2024, MAY and LEWIS engaged in the unauthorized assumption and exercise of the right of ownership over Mariner Foundation's funds or the exclusion of Mariner Foundation's rights over the funds.

109. Mariner Foundation operates the Inspire Dance Team so all payments from parents for students to participate with the Inspire Dance Team are owned by Mariner Foundation and Mariner Foundation is entitled to immediate possession of those funds.

110. MAY and LEWIS accepted payments from parents directly into the personal peer-to-peer payment service accounts and bank accounts of MAY and LEWIS and/or others and did not transmit all those funds to Mariner Foundation, including after Mariner Foundation made a demand for those funds.

111. Mariner Foundation incurred damages in the amount of funds MAY and LEWIS unlawfully withheld from Mariner Foundation, including interest.

30

## COUNT IX

## UNJUST ENRICHMENT
## (BY MARINER FOUNDATION AGAINST MAY AND LEWIS)

112.  Plaintiffs repeat and reallege the allegations of Paragraphs 1-111 as if fully set forth herein.

113.  From in or about September 2022 through in or about June 2024, MAY and LEWIS engaged in the unauthorized assumption and exercise of the right of ownership over Mariner Foundation's funds or the exclusion of Mariner Foundation's rights over the funds.

114.  Mariner Foundation operates the Inspire Dance Team so all payments from parents for students to participate with the Inspire Dance Team are owned by Mariner Foundation and Mariner Foundation is entitled to immediate possession of those funds.

115.  MAY and LEWIS accepted payments from parents directly into the personal peer-to-peer payment service accounts and bank accounts of MAY and LEWIS and/or others and did not transmit all those funds to Mariner Foundation, including after Mariner Foundation made a demand for those funds.

116.  MAY and LEWIS engaged in this unlawful activity even though they were annually paid, and they accepted, a non-gratuitous, measurable stipend of a fixed amount of money by the school to operate Mariner Foundation's afterschool, extracurricular Inspire Dance Team and were, thus, conferred a benefit that was not conferred by an interference that is not justified in the circumstances.

117.  MAY and LEWIS were unjustly enriched in the amount of funds MAY and LEWIS unlawfully withheld from Mariner Foundation, including interest.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.  Pursuant to 15 U.S.C. § 1116 and the equity jurisdiction of this Court, that Defendants and their respective officers, agents, employees, representatives, and all persons in privity therewith shall be preliminarily and permanently enjoined and restrained  from using on or in connection with the importation, sale, offering for sale, distribution, exhibition, display, or advertising of any good or service the infringing Inspire Performing Arts Company designation, or any other trademark or service mark or designation in combination with other words or symbols, that are confusingly or deceptively similar to Plaintiffs' Inspire Dance Team and Inspire Dance Company marks;

B.  That Defendants and their respective officers, agents, employees, representatives, and all persons in privity therewith be required to destroy and/or change all literature, signage, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationary, software, metadata and any other items in their respective possession or control that contain Defendants' infringing Inspire Performing Arts Company designation, or any confusingly similar term or designation, to preliminarily and permanently remove such designation;

C.  Pursuant to 15 U.S.C. § 1117, that Defendants shall be directed to pay to Plaintiffs any and all damages that Plaintiffs have sustained and/or that Defendants' revenues and profits illicitly earned by consequence of Defendants' trademark and service mark infringement, false designation of origin, passing off and unfair competition as enumerated herein;

D.  Preliminary and permanent injunctions prohibiting Defendants, their employees, agents, officers, directors, members, affiliated businesses, successors and assigns, and all persons acting by, through, under or in active concert or in participation with or controlled, either directly or indirectly, by any of them, from using in connection with the advertising, promotion or marketing of Inspire Performing Arts Company, any other business, or for any other purpose

32

whatsoever (except as approved by the Court or Plaintiffs for the limited purpose of Defendants' public apology and/or corrective advertising): (i) any image or video of the Inspire Dance Team, including each of the images described above; or (ii) any other information relating to Plaintiffs;

E. Preliminary and permanent injunctions requiring Defendants to remove from all their social media platforms, websites, sales aids, advertisements, and any other promotional material or medium, all use of: (i) any image or video of the Inspire Dance Team, including each of the images described above; or (ii) any other information relating to Plaintiffs;

F. Preliminary and permanent injunctions prohibiting Defendants, their employees, agents, officers, directors, members, affiliated businesses, successors and assigns, and all persons acting by, through, under or in active concert or in participation with or controlled, either directly or indirectly, by any of them, from soliciting, for a reasonable period of time to be directed by the Court or agreed by the parties, parents of students at Jackson Day School who participated with the Inspire Dance Team through June 2024 to offer dance-related services of Inspire Performing Arts Company or any other business;

G. An order requiring Defendants to prepare and, upon the approval of the Court or Plaintiffs, publish in the manner directed by the Court or agreed by the parties, a document incorporating a public apology for the unlawful activities made the subject of this lawsuit and corrective advertising reflecting the misleading and false nature of the representations made by Defendants in the previous references to, or images of, the Inspire Dance Team or Plaintiffs;

H. An accounting for all profits derived by Defendants from such unlawful activities;

I. An award of such monetary remedies in an amount sufficient to compensate each Plaintiff for damages each of them has sustained as a consequence of Defendants' unlawful acts, including interest, as well as the profits of Defendants derived from the activities advertised or promoted via Defendants' unlawful activities;

33

J. An award of trebled, punitive and/or enhanced damages, as appropriate, for Defendants' egregious and willful disregard and violation of Plaintiffs' rights;

K. That Defendants be directed to pay Plaintiffs' reasonable costs and attorneys' fees incurred in connection with this lawsuit;

L. Judgment in Plaintiffs' favor against Defendants as to each count set forth in this Complaint; and

M. All such other and further relief as this Court may deem just and proper.

## **VERIFICATION**

I am the authorized representative of Plaintiffs in this action. I have read the foregoing Verified Complaint and know the contents thereof. I declare under penalty of perjury that the foregoing is true and correct.

Tammy Winstead

Respectfully submitted,

VOGEL LAW FIRM PLLC

/s/ Jonathan A. Vogel
Jonathan A. Vogel
NC Bar No. 34266

6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
Telephone:704.552.3750
Facsimile:704.552.3705
Email: jonathan.vogel@vogelpllc.com

WALKER KIGER, PLLC

/s/ David "Steven" Walker
David "Steven" Walker
NC Bar No. 34270

100 Professional Court, Suite 102
Garner, NC 27529
Telephone:984.200.1930
Facsimile:984.500.0021
Email: steven@walkerkiger.com

*Counsel for Plaintiffs*