**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| MOUNTAIN ISLAND DAY COMMUNITY CHARTER SCHOOL d/b/a JACKSON DAY SCHOOL and MARINER FOUNDATION, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 3:24-cv-779 |
| v. | ) | |
| | ) | |
| INSPIRE PERFORMING ARTS COMPANY, LLC, MEGAN ELIZABETH ZUGELDER MAY and LISA LEWIS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS MOUNTAIN ISLAND DAY COMMUNITY
CHARTER SCHOOL d/b/a JACKSON DAY SCHOOL AND MARINER
FOUNDATION'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs MOUNTAIN ISLAND DAY COMMUNITY CHARTER SCHOOL d/b/a

JACKSON DAY SCHOOL and MARINER FOUNDATION submit this Memorandum of Law

in Support of the Motion for Temporary Restraining Order and Preliminary Injunction.

**INTRODUCTION**

Plaintiff Jackson Day School ("JDS") is a tuition-free, public charter school in Charlotte

that serves students in grades K-12 with a total Average Daily Membership ("ADM") of 920

students going into the 2024-2025 school year. Plaintiff Mariner Foundation ("Foundation")

functions as the parent-teacher organization for JDS, owns the physical facilities of the school,

and holds the associated debt. The Foundation also collects fees and pays expenses for the

afterschool, extracurricular Inspire Dance Team.

Plaintiffs bring this action against two former employees of JDS, Megan Elizabeth

1

Zugelder May and Lisa Lewis, and the business they recently opened, Inspire Performing Arts Company ("Inspire PAC"), due to their scheme to embezzle and misappropriate funds from the Foundation, violate the non-solicitation provisions of their employment agreements, and engage in false advertising in connection with their new business. As set forth below, for almost two years, May and Lewis directed parents of students in the school, whose children participated with the Inspire Dance Team, to pay May and Lewis for the dance team into the personal bank accounts of May, Lewis, and others with peer-to-peer payment services – such as Venmo, Zelle, and Cash App – rather than to pay Mariner Foundation, as directed by Plaintiffs. May and Lewis kept the funds that were transferred into their personal bank accounts through the aforementioned peer-to-peer payment services and did not transfer the funds to Mariner Foundation.

Moreover, before their employment agreements even ended, May and Lewis began soliciting parents of students participating with the Inspire Dance Team to join Inspire PAC, in violation of their non-solicitation provisions. Furthermore, Inspire PAC infringes Plaintiffs marks and falsely advertises and promotes its business on its website and on social media using photographs, videos, and other information of the Inspire Dance Team.

As a result, Plaintiffs move for a temporary restraining order and preliminary injunction.

## **FACTUAL BACKGROUND**

1. Plaintiff Jackson Day School ("JDS") is a tuition-free, public charter school in Charlotte that serves students in grades K-12 with a total ADM of 920 students going into the 2024-2025 school year. The school was first established in 2009 as a private school and converted to a public charter school in 2018. Most JDS students live in or near Mountain Island Lake, Steele Creek, Mount Holly, Belmont, Denver, and Huntersville. Over half the student body is comprised of

2

racial minority students and 13% of the students are eligible for free and reduced-price meals. Declaration of Tammy Winstead (hereafter "Winstead Decl.") ¶ 2.

2. Plaintiff Mariner Foundation ("Foundation") functions as the parent-teacher organization for JDS, owns the physical facilities of the school, and holds the associated debt. The Foundation also collects fees and pays expenses for the afterschool, extracurricular Inspire Dance Team, which, in text messages from Megan Elizabeth Zugelder May to parents, was called certain variations of that name since the time it started in 2019, such as MID Dance Team (to reflect that the name of the school was, at the time, Mountain Island Day Community Charter School), MID Inspire Dance Team, JDS Inspire Dance Team (to reflect that the school's name changed to Jackson Day School), and Inspire Dance Team. In 2023, JDS applied with the U.S. Patent and Trademark Office to register the trademarks "Inspire Dance Team" and "Inspire Dance Company," and those applications are pending. *Id.* at ¶¶ 3-4.

### *Embezzlement and Misappropriation of Funds*

3. From its inception in 2019 through September 2022, parents of students at Jackson Day School who participated on Mariner Foundation's afterschool, extracurricular Inspire Dance Team paid for that extracurricular activity by check made out to "Mariner Foundation" or by paying through Mariner Foundation's account with Square, a peer-to-peer payment service. *Id.* at ¶ 5.

4. In September 2022, during the course of reviewing budget reports, Tammy Winstead, who serves as Dean of Operations for the school and who also is a Board member of Mariner Foundation, noticed that an account for Mariner Foundation with Zelle, a different peer-to-peer payment service, had been established. Ms. Winstead contacted Karen Lyons, the school's financial secretary, to inquire about the Zelle account that had been established without Ms.

3

Winstead's approval. Ms. Lyons explained that May and Lewis had requested the creation of a Zelle account because the processing fees were less expensive than Square. Ms. Winstead examined the processing fees, agreed that Zelle was less expensive than Square, and permitted May and Lewis to continue using Mariner Foundation's Zelle account to collect Inspire Dance Team payments. Jackson Day School terminated Ms. Lyons' employment in September 2022. *Id.* at ¶ 6.

5.  In November 2022, Kim Coppolo, Jackson Day School's new financial secretary, discovered that, without Ms. Winstead's authorization, Ms. Lyons had provided Lewis with access to the Zelle account to enable Lewis to see the payments and ensure that parents had made timely payments. That way, Ms. Lyons would not have to print reports for Lewis. *Id.* at ¶ 7.

6.  Ms. Coppolo also discovered that, without authority, Lewis was using Mariner Foundation's Zelle account to make payments to dance instructors used by the Inspire Dance Team. Lewis was supposed to submit a request for payment to Ms. Coppolo who, in turn, would obtain Ms. Winstead's approval and, if granted, would then make payment to the vendor. As a result, Ms. Coppolo told Lewis she could not pay dance instructor with Zelle and, instead, would have to route payment requests through Mariner Foundation's bill payment platform called Bill.com that is now known simply as "BILL." *Id.* at ¶ 8.

7.  When Lewis responded via email, pushing back against the idea of using BILL instead of Zelle and copying May, Quartney Beachy of Mariner Foundation's accounting firm responded to Lewis and May that any service provided by a dance instructor would go through Ms. Winstead and BILL in order to be handled the same way as any other vendor. Ms. Beachy explained that, after an invoice from a dance instructor is approved by Ms. Winstead, payment is processed through BILL, which transmits payment to the instructor's bank account. Nigel Bearman, Ms.

4

Beachy's supervisor responded via email to Lewis and May that the appropriate controls must be in place to ensure that all payments are documented and made with the right approvals. The response from Lewis, which copied May, was thankfulness for "help and guidance with my questions." Lewis further stated, "We certainly can work as a team to make sure all is in place, thank you!" *Id.* at ¶ 9.

8. In January 2023, Ms. Winstead attempted to block access to Mariner Foundation's bank account to ensure that Lewis and May did not have access to the account. In June 2023, it appeared to Ms. Winstead that Lewis somehow gained access to Mariner Foundation's bank account. *Id.* at ¶ 10.

9. In July 2023, Jill McQuay, Jackson Day School's new financial secretary and Ms. Winstead went to the bank to change logins and passwords to ensure the Mariner Foundation's account was secure and to ensure that LEWIS and MAY did not have access to the account. Ms. Winstead also ordered new checks and cards. Ms. McQuay and Ms. Winstead also blocked the ability of LEWIS and MAY to transfer payments out of Mariner Foundation's Zelle account to dance instructors. *Id.* at ¶ 11.

10. In November 2023, Lewis and May sent a text message to parents of students who participated on the Inspire Dance Team that parents should make payments to May's personal Zelle account or to the personal Zelle account of another dance instructor. Ms. Winstead met with Lewis in person to discuss the text message and to remind her that they had many discussions that all payments are to be made to Mariner Foundation by check or through BILL, and not to be made to dance instructors. Lewis assured Ms. Winstead that Lewis and May would correct the error. *Id.* at ¶ 12.

11. In December 2023, payments were still being made by parents to dance instructors, rather

5

than to Mariner Foundation. Ms. Winstead sent Lewis a text message stating that she needed to speak with Lewis about billing. When Ms. Winstead spoke to Lewis, Ms. Winstead again explained that payments from parents must be made to Mariner Foundation, and not to May's bank account or any other dance instructor's bank account. Lewis confessed to Ms. Winstead that 17 families had each sent $350 to May's personal bank account. *Id.* at ¶ 13.

12. Also in December 2023, Ms. Winstead sent Lewis another text message to again direct Lewis and May that (1) parents are to make payments to Mariner Foundation via check or Mariner Foundation's Zelle account, and (2) dance instructors are paid by Mariner Foundation through BILL. Ms. Winstead stated that there was over $20,000 in undocumented funds that had gone to May, and she demanded that Lewis and May immediately transmit those funds to Mariner Foundation. Ms. Winstead also directed that Lewis (1) confirm that payments from parents are being paid directly to Mariner Foundation, (2) send a communication to parents to explain that payments from parents must be paid directly to Mariner Foundation, and (3) provide Ms. Winstead a copy of the communication to parents. *Id.* at ¶ 14.

13. In response, Lewis sent a text message to Ms. Winstead stating that Lewis and May are using BILL to pay dance instructors but denying that Lewis had ever communicated with Ms. Winstead about the requirement that parents pay Mariner Foundation, and not May, falsely stating that the Inspire Dance Team was a "separate entity" from Mariner Foundation. *Id.* at ¶ 15.

14. In March 2024, Ms. Winstead received a text message from May directing Ms. Winstead to send May's payment to May's Zelle account and another dance instructor's payment to that individual's Zelle account. In response, Ms. Winstead sent a text message to Lewis letting her know that Ms. Winstead had already discussed with Lewis that such payments to dance instructors' Zelle accounts cannot be made because the payments must be made through BILL.

6

*Id.* at ¶ 16.

15. In or about March 2024, Ms. Winstead and Adam Hill with the school's human resource office met with Lewis and May in person and Ken Holt, the school board's treasurer, participated by phone. Mr. Holt informed Lewis and May that he knew Ms. Winstead had addressed with Lewis and May the concerns with improper payments being received by May from parents and improper payments being made to dance instructors by Lewis and May. Mr. Holt told Lewis and May that the next payment directed to their personal accounts would result in their termination of employment. *Id.* at ¶ 17.

16. In response to Mr. Holt, Lewis stated that Lewis and May would move Mariner Foundation's afterschool, extracurricular Inspire Dance Team off school property and continue their practice of parents paying May directly. Mr. Holt reminded Lewis and May that they were employees of Jackson Day School and directed them not to attempt to take Mariner Foundation's Inspire Dance Team away. *Id.* at ¶ 18.

17. At the conclusion of the meeting, Lewis and May stated that payments from parents would go to Mariner Foundation. However, very few payments from parents subsequently went to Mariner Foundation. *Id.* at ¶ 19.

18. Transactions through Venmo, Zelle, and CashApp demonstrate that Lewis and May were receiving funds from parents directly into Lewis and May's personal accounts that should have been sent to Mariner Foundation. *Id.* at ¶ 20.

19. In other instances, a parent was receiving funds from parents for concessions, and then purportedly sending those funds to Lewis and May, rather than Mariner Foundation. *Id.* at ¶ 21.

20. An estimated $50,894.59 was embezzled and misappropriated by Lewis and May during the 2023-2024 school year. *Id.* at ¶ 22.

### *Violation of Non-Solicitation Agreement*

21. Ultimately, in June 2024, while still under contract with the school, May and Lewis left the school and promptly solicited parents of students in the school, whose children participated in Mariner Foundation's afterschool, extracurricular Inspire Dance Team, to join the competing dance team of May and Lewis called "Inspire Performing Arts Company" (Inspire PAC). Inspire PAC is located at 2918 Mt. Holly-Huntersville Road in Charlotte, North Carolina, which is only five miles and a ten-minute drive from Jackson Day School and the Inspire Dance Team at 1209 Little Rock Road in Charlotte, North Carolina. Their solicitation of parents of students in the school, whose children participated in Mariner Foundation's afterschool, extracurricular Inspire Dance Team, violated their employment agreements prohibiting such solicitation. *Id.* at ¶ 23.

22. In or about May 2023 and November 2023, May and Lewis, respectively, had each entered into employment agreements to be teachers with Jackson Day School for the 2023-2024 school year, described as beginning in August 2023 and November 2023, respectively, and going through June 2024. In the employment agreements, the school agreed to pay annual compensation to May and Lewis in return for their services and certain promises made within the agreements. *Id.* at ¶ 24.

23. One such promise in the employment agreements was that, in the event employment is terminated by either the school or employee, May and Lewis would not solicit the families and students of the school with whom May and Lewis had developed relationships through resources provided by the school, such as the Inspire Dance Team:

> *In the event that employment is terminated either by the school or employee, all communication, relations, and activity with families and students whose relationships were initiated with the employee through the resources of the school must cease for the benefit of the students, the new teacher, and the school. Any attempts to communicate using resources initiated by the school or relationships*

8

*initiated in the school may result in legal action against the employee.*

*Id.* at ¶ 25.

24. As it turns out, unbeknownst to Plaintiffs at the time, May had formed a limited liability company, Defendant Inspire Performing Arts Company, LLC, to ostensibly prepare to solicit parents of students at the school whose children participate with the Inspire Dance Team. *Id.* at ¶ 26.

25. Beginning in or about June 2024, Inspire PAC began to solicit parents of students at the school whose children participate with the Inspire Dance Team. On or about June 26, 2024, May and Lewis sent an email from "Inspire Performing Arts Company" with the email address inspirepac.clt@gmail.com to the parents of students at the school whose children participate with the Inspire Dance Team. In the email, May and Lewis provided, among other things, a deceptive announcement about the Inspire Dance Team's transition to an "independent organization":

> *Inspire is thrilled to announce its next adventure! Inspire Performing Arts Company will be opening its doors as an independent organization in a studio that will create a trajectory of growth by sharing our passion for dance and the performing arts with the Charlotte community and beyond!! To stay up to date, please follow our socials (information shared below) and keep an eye on your email over the next few weeks. If you have questions or would like more information regarding Inspire Performing Arts Company and its offerings please reach out. We are so excited to start this journey in God's plan and we hope you will continue with us for the greatness ahead. Let's go INSPIRE!*

*Id.* at ¶ 27.

26. The June 26, 2024 email from May and Lewis was signed as follows:

> *Megan Zugelder May*
> *Lisa Lewis*
> *& the Inspire Coaching Team [blue heart emoji]*

*Id.* at ¶ 28.

9

### *Trademark Infringement and False Advertising*

27. Defendants have, in multiple ways, intentionally and without authorization used the marks, images and video of the Inspire Dance Team to advertise and promote the dance business Inspire PAC. *Id.* at ¶ 29.

28. For example, Inspire PAC's website at https://www.inspireperformingartscompany.com/gallery displays images of the Inspire Dance Team to advertise and promote the dance business Inspire PAC. *Id.* at ¶ 30.

29. In addition to intentionally and without authorization using the marks and posting images of the Inspire Dance Team to advertise and promote its dance business on its website, Inspire PAC also posts images and videos of the Inspire Dance Team on its Facebook, Instagram, and YouTube social media platforms:

    a. https://www.facebook.com/share/S3vTFAjyD9bt5Eax/?mibextid=LQQJ4d

    b. https://www.instagram.com/INSPIRE_PAC_CLT/

    c. https://www.youtube.com/playlist?list=PLAPjZkV9JkZEWCE2UImDFMijAR
       GGTlSCz

*Id.* at ¶ 31.

30. Multiple JDS families informed Ms. Winstead that they made an association between the Inspire Dance Team and Inspire PAC and have chosen to send their children to Inspire PAC. *Id.* at ¶ 32.

### **ARGUMENT**

To obtain a temporary restraining order or preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *WV Ass'n of Club Owners & Fraternal Services, Inc. v.*

10

*Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (*quoting Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). Notably, if the balance of the harms "tips decidedly in favor of the plaintiff," which it does here, a preliminary injunction will be granted even if the plaintiff only raises substantial questions as to the merits of the underlying case. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

## I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs have brought nine claims against Defendants. For this Motion, however, Plaintiffs only seek injunctive relief on its claims for: (A) violations of the Lanham Act and North Carolina's Unfair and Deceptive Trade Practices Act (Counts 1-3); and (B) breach of contract and breach of the implied covenant of good faith and fair dealing (Counts 4-7).

### A.      Plaintiffs are likely to succeed on their claims for trademark infringement and false advertising under the Lanham Act and unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act.

#### 1.  Trademark Infringement and Unfair Competition

With respect to Plaintiffs' clam for trademark infringement and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), the issue is whether Defendants have created a likelihood of confusion through the use of their infringing designation. "A likelihood of confusion exists if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (citation and internal quotation marks omitted). "In assessing whether such confusion exists, we look to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion." *Id.* (citation and internal quotation marks

11

omitted). In the Fourth Circuit, this analysis is conducted by examining nine factors to determine the likelihood of confusion: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *Id.* (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one through seven); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996) (identifying factors eight and nine)). However, the factors are not of equal importance, nor are they all relevant in every case. *George & Co.*, 575 F.3d at 393 (citing *Anheuser–Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)); *see also id.* (noting that the *Pizzeria Uno* factors are not meant to be a rigid formula for infringement; they are "only a guide—catalog of various considerations that may be relevant in determining the ultimate statutory question of likelihood of confusion"). Moreover, not every factor needs to support Plaintiffs' position on the likelihood of confusion. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006) (citing *Pizzeria Uno*, 747 F.2d at 1527); *see also Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) ("[A]n injunction may be warranted even if some of those factors do not favor the plaintiff.").

     ***Strength or Distinctiveness***. Plaintiffs' Inspire Dance Team and Inspire Dance Company marks are inherently distinctive and strong marks for dance classes and teams. "The 'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength." *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000)). The Inspire

Dance Team has been using the marks in question since at least March 2020. *See* Winstead Decl. at Exhibits B and C. The marks have been extensively used in communications to parents of students on the Inspire Dance Team, *see* Winstead Decl. at Exhibit A, and in actual dance competitions, *see* Winstead Decl. at Exhibit L, as well as on the JDS website: https://www.jacksonday.org/copy-of-athletics-3. Here, Plaintiffs and Defendants are direct competitors attempting to provide student dance services. Yet Defendants use the infringing designation and deliberately and falsely associate themselves with Plaintiffs and the Inspire Dance Team when contacted by potential, current, and former parents of students on the Inspire Dance Team. Such actions are intended clearly to use the infringing designations to wrongly enhance the reputation of Defendants.

*Similarity of Marks to Consumers*. Plaintiffs' Inspire Dance Team and Inspire Dance Company marks are very similar to parent consumers as Defendants' infringing Inspire Performing Arts Company designation. Both begin with the word "Inspire." For parents looking for the "Inspire" dance business in the geographic area of JDS, Defendants' infringing designation is confusing. This factor weighs in Plaintiffs' favor.

*Similarity of Goods and Services*. The Inspire Dance Team and Inspire Dance Company, on the one hand, and Inspire Performing Arts Company, on the other hand, provide the same type of dance class and team services. This factor weighs in Plaintiffs' favor.

*Similarity of Facilities Used*. The Inspire Dance Team and Inspire Dance Company, on the one hand, and Inspire Performing Arts Company, on the other hand, market using the Internet with websites and Facebook. Both websites and Facebook profiles show pictures of students (in fact, both show pictures of Inspire Dance Team students) and provide information. This factor weighs in Plaintiffs' favor.

13

*Similarity of Advertising*. As discussed above, both advertise using websites and social media. This factor weighs in Plaintiffs' favor.

*Defendants' Intent*. The evidence of Defendants May and Lewis taking Inspire Dance Team funds from parents that were due to be paid to Mariner Foundation, and violating their non-solicitation agreements, especially when viewed together with May having formed a corporate entity in 2023 called Inspire Performing Arts Company, LLC, indicates that Defendants use of Plaintiffs' marks was malicious. Moreover, despite being put on actual notice of Plaintiffs' rights, Defendants have still refused to abandon their infringing designation, suggesting that Defendants have assumed the continued risk of liability for infringement and are continuing to infringe willfully. More importantly, Defendants have continued their course of conduct in falsely associating themselves with Plaintiffs despite being on notice of Plaintiffs' rights. This factor thus favors Plaintiffs especially since the time Defendants were put on notice of Plaintiffs' rights.

*Actual Confusion*. Considering that multiple families have made an association between the Inspire Dance Team and Inspire PAC and have chosen to send their children to Inspire PAC, this factor favors Plaintiffs.

*Quality of Defendants' Product*. While Plaintiffs' Inspire Dance Team has existed for several years, Defendants' Inspire Performing Arts Company is a new, untested business that is only first opening in the coming weeks. This factor favors Plaintiffs.

*Sophistication of Consuming Public*. The consuming public is comprised of parents of children in the geographic area near JDS who are interested in dance classes and competitions and is, thus, a relatively unsophisticated consuming public compared to commercial operators. Generally speaking, parents want to sign their children up for a dance team that was

14

recommended to them by the school or by other parents. By trading off Plaintiffs' goodwill by using a confusingly similar designation, Defendants unfairly benefit from Plaintiffs' superb reputation in the industry. Poor service or disappointment related to Defendants' dance class services offered in connection with the infringing designation could reflect adversely on Plaintiffs and cause Plaintiffs to lose their dance class students and reputation. That likely would detract from Plaintiffs' future sales and harm Plaintiffs' goodwill. Thus, this factor weighs in Plaintiffs' favor.

In sum, all nine *Pizzeria Uno/Sara Lee* factors weigh in Plaintiffs' favor, and Plaintiffs have thus shown a likelihood of success in proving a likelihood of confusion.

### 2. False Advertising

Plaintiffs' claim for false advertising is based on Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). To state a claim for false advertising under the Lanham Act, a plaintiff must satisfy five elements: (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002) (internal citations omitted); *see* 15 U.S.C. § 1125(a)(1)(B).

Here, there is evidence that Defendants are making false or misleading descriptions of fact or representations of fact about Inspire PAC in a commercial advertisement through

15

interstate commerce because Inspire PAC's website – as well as its Facebook, Instagram, and YouTube social media platforms – features images and/or videos of Mariner Foundation's Inspire Dance Team. Defendants' misrepresentations are material because images and videos on a dance team's website and social media platforms are integral to a family's decision to pay for its children to participate with that dance team. Defendants' actions of posting pictures of the Inspire Dance Team has the tendency to deceive a substantial segment of its Jackson Day School family audience because, together with using the word "Inspire" from the Foundation's Inspire Dance Team name to advertise and promote its business, Defendants' use of Inspire Dance Team images and videos of Jackson Day School students makes the public believe that Defendants' Inspire PAC is the same as the Inspire Dance Team. For all these reasons, the Foundation is likely to be injured as a result of Defendants' misrepresentations, either by losing dance families to Inspire PAC or by a lessening of goodwill associated with the Foundation's Inspire Dance Team.

### 3. *Unfair and Deceptive Trade Practices*

Furthermore, Defendants' use of the images and videos of the Inspire Dance Team to promote and advertise Inspire PAC, without Mariner Foundation's permission, is deceptive conduct in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). It is also unfair conduct under UDTPA in that Defendants' refused to take down the deceptive images and videos when specifically requested to do so by Plaintiffs through their counsel. To state a claim under UDTPA, a plaintiff must show (1) an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 901 (2002). A claim for false advertising under the Lanham Act constitutes a sufficient basis to assert an unfair

16

or deceptive act or practice under UDTPA. *CBD Indus., LLC v. Majik Med., LLC*, No. 3:21-CV-069-RJC-DCK, 2022 WL 18893076, at *7 (W.D.N.C. Oct. 19, 2022), *report and recommendation adopted*, No. 3:21-CV-069-RJC-DCK, 2023 WL 2428252 (W.D.N.C. Mar. 9, 2023)*; Hyundai Motor Am., Inc. v. Direct Techs. Int'l, Inc.*, No. 3:17-CV-732-MOC-DSC, 2018 WL 4110544, at *4 (W.D.N.C. Aug. 29, 2018); *see also Winston Realty Co., Inc. v. G.H.G., Inc.*, 331 S.E.2d 677, 681 (N.C. 1985) (holding that a violation of North Carolina's false advertising statute for employment agencies "as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75-1.1."); *Pearce v. American Defender Life Ins. Co.*, 343 S.E.2d 174, 179 (N.C. 1986) (holding that a violation of North Carolina's false advertising statute for the insurance industry "as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75–1.1.").

      **B.**    **Jackson Day School is likely to succeed on its claims for breach of contract and breach of the implied covenant of good faith and fair dealing.**

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract, and (2) breach of the terms. *Supplee v. Miller-Motte Business College, Inc.*, 768 S.E.2d 582, 590 (N.C. App. 2015). The plaintiff "must point to an identifiable contractual promise that the defendant failed to honor." *Id.* at 591. Additionally, all parties to an enforceable contract must act under the implied covenant of good faith and fair dealing. *Maglione v. Aegis Family Health Centers*, 607 S.E.2d 286 (N.C. App. 2005). The implied covenant imposes an "agreement that neither party will do anything which will destroy or injure the right of the other to receive the benefits of the agreement." *Id.* at 291. Where a contract calls for the exercise of discretion, the implied covenant includes a promise to act reasonably and not arbitrarily or irrationally in exercising that discretion. *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 447 (N.C. App. 1997).

17

A breach of this implied covenant creates a right in the aggrieved party to bring an independent claim to recover for the breach. *Richardson v. Bank of America., N.A.*, 643 S.E.2d 410, 426-27 (N.C. App. 2007).

Here, May and Lewis violated the provision of their employment contracts prohibiting them from soliciting parents of Jackson Day School students who participated with the Inspire Dance Team, and, upon information and belief, May and Lewis are still soliciting those parents to leave the Inspire Dance Team and to pay for their children to join Inspire PAC. The non-solicitation provision that May and Lewis are violating provides "In the event that employment is terminated either by the school or employee, all communication, relations, and activity with families and students whose relationships were initiated with the employee through the resources of the school must cease for the benefit of the students, the new teacher, and the school." It further provides "Any attempts to communicate using resources initiated by the school or relationships initiated in the school may result in legal action against the employee."

However, on June 26, 2024, before their employment agreements had even expired, May and Lewis sent an email to parents of Jackson Day School students who participated with the Inspire Dance Team urging them to pay to join Inspire PAC as their children's dance team. Upon information and belief, May and Lewis directly or indirectly continue to solicit parents of Jackson Day School students who participated with the Inspire Dance Team.

"In North Carolina, the protection of customer relations against misappropriation by a departing employee is well recognized as a legitimate interest of an employer." *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 656, 670 S.E.2d 321, 327 (2009). To be valid, the restrictions within a non-solicitation provision "must be no wider in scope than is necessary to protect the business of the employer." *Id.* A restrictive covenant may "be directed at protecting a

18

legitimate business interest [b]ut . . . where the Agreement reaches not only clients, but potential clients, and extends to areas where Plaintiff had no connections or personal knowledge of customers, the Agreement is unreasonable." *Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A. v. Zaldivar*, 826 S.E.2d 723, 731-32 (N.C. App. 2019) (quoting *Hejl v. Hood, Hargett & Assocs.*, 674 S.E.2d 425, 430 (N.C. App. 2009)). The non-solicitation provision at issue in this action is directed at protecting the legitimate business interest to maintain customer relationships with, and revenue from, parents of Jackson Day School students who participated with the Inspire Dance Team. The provision is not wider in scope than necessary because it is properly limited to clients and not potential clients, *i.e.*, parents of Jackson Day School students who participated with the Inspire Dance Team ("all communication, relations, and activity with families and students *whose relationships were initiated with the employee through the resources of the school* must cease for the benefit of the students, the new teacher, and the school") and, even if it was not limited to potential clients, it at least did not extend to areas where Jackson Day School had "no connections or personal knowledge of customers." *Zaldivar*, 826 S.E.2d at 731-32.

## II.      DEFENDANTS ARE SUFFERING IRREPARABLE HARM.

May and Lewis's embezzlement and misappropriation of Mariner Foundation's funds and May and Lewis's violations of the non-solicitation provisions of their employment agreements, together with Inspire PAC's false advertising that misrepresents Inspire Dance Team's participants as its own participants are causing, and will continue to cause, irreparable injury unless the Court puts a stop to it. In recent weeks, as a result of Defendants' unlawful activities, the Foundation's Inspire Dance Team has lost virtually all of its student participants and adult staff to Inspire PAC, which held auditions for its competitive dance team during the week of August 12, 2024 and presumably intends to begin classes within the next two weeks.

19

Injunctive relief that directs Defendants to cease soliciting Inspire Dance Team customers, to cease engaging in false advertising to confuse the public, and to retain the funds in a constructive trust that May and Lewis embezzled from the Foundation is critical. Without an injunction, Plaintiffs will suffer irreparable harm in the form of loss of good will and loss of existing and potential customers. Moreover, because Mariner Foundation has shown a likelihood of success on the merits of its false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), irreparable injury is presumed under the statute. 15 U.S.C. § 1116(a) (plaintiff seeking an injunction to prevent a violation under subsection 1125(a) "shall be entitled to a rebuttable presumption of irreparable harm"); *Green v. ABC Companies*, 702 F. Supp. 3d 418, 423 (W.D.N.C. 2023) ("[T]he Lanham Act provides that 'upon a finding of a likelihood of success on the merits,' a plaintiff 'shall be entitled to a rebuttable presumption of irreparable harm.'").

Absent a temporary restraining order and preliminary injunction, Defendants have no ability to prevent the continued damage to their business and reputation that May and Lewis, and their company, Inspire PAC, will cause.

### III.     THE BALANCE OF EQUITIES WEIGHTS IN FAVOR OF PLAINTIFFS.

In contrast to the real and substantial irreparable injury to Mariner Foundation and Jackson Day School, there is no recognizable harm to May, Lewis, and Inspire PAC if a temporary restraining order and preliminary injunction are entered. Injunctive relief will only prevent the misuse of the images, videos, and other information of the Foundation's Inspire Dance Team and avoid confusion in the marketplace, both of which are lawful and desirable outcomes. It will also stop May and Lewis from continuing to directly and indirectly solicit the Foundation's customers of Inspire Dance Team in violation of their employment agreements with Jackson Day

20

School, and it will preserve and protect the funds that May and Lewis embezzled and misappropriated from the Foundation.

The willful and surreptitious nature of Defendants' conduct further underscores that the balance of equities favors Plaintiffs. Defendants know that the images, videos, and other information of the Inspire Dance Team that are being used to advertise and promote Inspire PAC are misleading because May and Lewis used to lead the Inspire Dance Team. The fact that they created a business entity in 2023 during a time when they were embezzling and misappropriating funds indicates that this was all part of a plan: Create a business entity, embezzle funds under the false pretense that the Inspire Dance Team is an independent organization that May and Lewis could "take with them" to start Inspire PAC, and then start Inspire PAC using the images, videos, and information of the Inspire Dance Team to mislead customers into thinking that the Inspire Dance Team simply moved to Inspire PAC.

## IV.    A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST.

The public interest is served "by preventing unethical business conduct." *Viper Publ'g, LLC v. Bailey*, No. 3:17-CV-00314-GCM, 2021 WL 956231, at *3 (W.D.N.C. Jan. 12, 2021) (citing *Philips Electronics N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 724 (M.D.N.C. 2009)); *UBS Painwebber, Inc. v. Aiken*, 197 F. Supp. 2d 436, 448 (W.D.N.C. 2002) ("The public has an interest in ensuring that contracts are enforced [and] [t]he public has no interest in destroying contracts . . . and encouraging unethical business behavior.") (cleaned up). In *Viper*, this Court held that "the public interest is served in granting the preliminary injunction because doing so will emphasize that parties who make contracts must abide by the obligations set forth in those contracts." *Id.* Moreover, if the Foundation's Inspire Dance Team is driven out of business by Defendants' unlawful activities, then the public, and more specifically, parents of Jackson Day

School students, will be injured by being denied the choice of the Inspire Dance Team. *See WNC Stores, LLC v. Mansfield Oil Co. of Gainesville, Inc.*, No. 1:09CV205, 2009 WL 10726654, at \*7 (W.D.N.C. Aug. 18, 2009) ("[I]f Jordan Entities is driven out of business, then the public can be injured by not having competitive fuel pricing at the locations where Jordan Entities now serves customers."). Accordingly, preliminary injunctive relief for Plaintiffs is in the public interest.

## V. THE RULE 65(c) BOND SHOULD BE MINIMAL.

The Court may issue a preliminary injunction upon the giving of security by the applicant "in such sum as the court deems proper." Fed. R. Civ. P. 65(c). "Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly." *Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F.Supp.2d 517, 521 (W.D.N.C. 1999). Indeed, "[i]n some circumstances, a nominal bond may suffice." *Id.*; *Candle Factory, Inc. v. Trade Associates Group, Ltd.*, 23 Fed. Appx. 134, at \*5 (4th Cir. Nov. 30, 2001) (affirming a $500 bond under the Lanham Act). In *Arkansas Best*, this Court determined that the posting of a security bond in the amount of $100 was sufficient where the plaintiffs showed a strong likelihood of success on the merits and prima facie proof of a Lanham Act violation that raised the presumption of injury and harm.

Similarly, here, Plaintiffs have demonstrated a strong likelihood of success on the merits. Defendants have no right to use the Inspire Dance Team's images, videos, and information to advertise and promote Inspire PAC, and May and Lewis have no right to continuously violate the non-solicitation provision of their employment agreements. Thus, Defendants will not suffer harm by being enjoined from future use of the Inspire Dance Team information or from soliciting the parents of Jackson Day School students who participated with the Inspire Dance Team. The Court should therefore require a nominal bond no greater than $100, if any.

22

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion for a Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

VOGEL LAW FIRM PLLC

/s/ Jonathan A. Vogel
Jonathan A. Vogel
NC Bar No. 34266

6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
Telephone:704.552.3750
Facsimile:704.552.3705
Email: jonathan.vogel@vogelpllc.com

WALKER KIGER, PLLC

/s/ David "Steven" Walker
David "Steven" Walker
NC Bar No. 34270

100 Professional Court, Suite 102
Garner, NC 27529
Telephone:984.200.1930
Facsimile:984.500.0021
Email: steven@walkerkiger.com

*Counsel for Plaintiffs*

23

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.


*/s/ Jonathan A. Vogel*
Jonathan A. Vogel

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that Defendants were served on August 27, 2024 with a copy of PLAINTIFFS MOUNTAIN ISLAND DAY COMMUNITY CHARTER SCHOOL d/b/a JACKSON DAY SCHOOL AND MARINER FOUNDATION MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION by FedEx to the following addresses:

Daryl L. Hollnagel
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street, Suite 2200
Charlotte, NC 28250
*Counsel for Defendant Inspire Performing Arts Company, LLC & Megan Elizabeth Zugelder May*

Lisa Lewis
9416 Cantle Drive
Charlotte, NC 28216

*/s/ Jonathan A. Vogel*
Jonathan A. Vogel

25