# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:24-CV-779-KDB-DCK

| | | |
|---|---|---|
| MOUNTAIN ISLAND DAY COMMUNITY CHARTER SCHOOL, d/b/a JACKSON DAY SCHOOL, and MARINER FOUNDATION, | ) ) ) ) | |
| Plaintiffs / Counterclaim Defendants, | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| v. | ) ) | |
| INSPIRE PERFORMING ARTS COMPANY, LLC, MEGAN ELIZABETH ZUGELDER MAY, and LISA LEWIS, | ) ) ) ) | |
| Defendants / Counterclaim Plaintiffs / Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| JACKSON DAY SCHOOL BOARD OF DIRECTORS, MARINER FOUNDATION BOARD OF DIRECTORS, and TAMMY WINSTEAD, | ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' . . . Memorandum In Support Of Their Partial Motion To Dismiss. . ." (Document No. 50); "Plaintiffs' And Third-Party Defendants' Motion To Dismiss First Amended Counterclaims And To Dismiss Or Strike First Amended Third-Party Claims" (Document No. 66); and "Plaintiff Jackson Day School's And Third-Party Defendants Jackson Day School Board Of Directors's And Tammy Winstead's Motion To Dismiss. . . " (Document No. 70).[1] These motions have been referred to the

---

[1] Document No. 50 is construed by the Court as Defendants' "Partial Motion To Dismiss," although Document Nos. 50 and 50-1 are both captioned as Defendants' "…Memorandum In Support Of Their Partial Motion To Dismiss…."

undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motions be <u>granted</u> in part and <u>denied</u> in part.

## I. BACKGROUND

### A. Factual

According to the "First Amended Complaint" (Document No. 39) (the "Complaint"), Defendants Megan Elizabeth Zugelder May ("May") and Lisa Lewis ("Lewis") "embezzled and misappropriated funds from Mariner Foundation while they were employed by Jackson Day School ("JDS") as dance teachers to provide instruction during school hours and paid an additional stipend to run Mariner Foundation's afterschool, extracurricular Inspire Dance Team." (Document No. 39, pp. 1-2). The Complaint contends that May and Lewis "developed the marks 'Inspire Dance Team' and 'Inspire Dance Company' in 2019 in the scope of their employment with Jackson Day School." (Document No. 39, p. 2). "In 2023, Jackson Day School applied with the U.S. Patent and Trademark Office to register the trademarks 'Inspire Dance Team' and 'Inspire Dance Company,' and those applications are pending." <u>Id.</u>

Mountain Island Day Community Charter School d/b/a Jackson Day School ("JDS") and Mariner Foundation (together, "Plaintiffs") allege that May and Lewis "directed parents of students in the school, whose children participated with the Inspire Dance Team, to pay MAY and LEWIS for the dance team's tuition, fundraisers, costumes, and competition fees" directly to the personal bank accounts of May and Lewis, who "did not transfer the funds to Mariner Foundation." <u>Id.</u> Moreover, the Complaint asserts that May and Lewis left JDS in June 2024, and promptly solicited JDS parents to join a competing dance team called "Inspire Performing Arts Company." <u>Id.</u> Plaintiffs also allege that Inspire Performing Arts Company "used images and video of the

Inspire Dance Team to advertise and promote" its own dance business. (Document No. 39, pp. 3-9).

The Complaint asserts that "[a]s a consequence, Plaintiffs find it necessary to seek this Court's intervention to curtail Defendants' unlawful activities and to obtain the legal and equitable remedies to which Plaintiffs are entitled." (Document No. 39, p. 10).

Defendants' "First Amended Counterclaims…" asserts that "Inspire Performing Arts Company, and May and Lewis, have priority and own common law trademark rights in and to the mark INSPIRE for use and connection with providing dance instruction, dance classes, and competition dance teams for children." (Document No. 63, p. 5). Defendants note that in 2012, while then employed by Charlotte Mecklenburg Schools ("CMS") as teachers at Winding Springs Elementary School, May and Lewis started the Winding Springs Dance Team. Id.

According to the "First Amended Counterclaims…" "[i]n September 2015, May and Lewis decided to form a dance company so that students from anywhere, some of whom had graduated from Winding Springs and moved on to middle school, could continue their pursuit of dance." (Document No. 63, p. 6). "May and Lewis chose the name Inspire Dance Company for their new dance team," "and this new dance team operated separate and apart from the Winding Springs Dance Team." Id.

"In January 2016, May hired a design company, Awards Express, Inc. to design a new logo for Inspire Dance Company." Id. The logo was finalized by March 2016, and "May and Lewis applied the logo created by Awards Express, Inc. to jackets and t-shirts." (Document No. 63, p. 7). The "First Amended Counterclaims…" further assert that the Inspire Dance Company appeared in multiple dance competitions between 2016 – 2018, using the INSPIRE mark. (Document No. 63, pp. 10-12).

In or about the Spring of 2018, Tammy Winstead, Dean of Operations at JDS, interviewed May for a teaching position at JDS.[2] (Document No. 63, p.12). During the in-person interview, "Winstead reviewed May's videos of Inspire Dance Company," and "Winstead showed these videos to the JDS Board prior to May being hired as a teacher." Id. As such, Defendants / Counterclaimants allege that Winstead and the JDS Board had full knowledge of May's use of the INSPIRE mark for years prior to her employment with JDS as a teacher. Id.

May and Lewis were both employed by JDS as teachers by Fall of 2018. (Document No. 63, p. 13). According to the "First Amended Counterclaims…" Inspire Dance Company continued to operate and compete as before, using the same logo as it had done since 2016, and borrowing space from JDS for rehearsals. (Document No. 63, pp. 13-14). "During the 2018 – 2019 dance season only one Inspire Dance Company member was a student at Jackson Day School." (Document No. 63, p. 14). "During the 2019 – 2020 dance season, the Inspire Dance Company was offered to students at Jackson Day School, who were required to audition in order to be accepted into the Inspire Dance Company." Id.

"As with prior dance seasons, in the 2021-2022 and 2022-2023 seasons, the Inspire Dance Company team dancers wore the INSPIRE mark and Inspire Dance Company logo apparel including jackets, t-shirts and backpacks." (Document No. 63, p. 16). Defendants' version of the facts indicates an evolving procedure for the handling of funds related to the dance team, suggests financial disagreements between the parties, and alleges a "lack of transparency" for how dance team funds were collected and distributed by Winstead and/or Mariner Foundation. See (Document No. 63, pp. 14-19, 23-24).

---

[2] Tammy Winstead ("Winstead") "serves as Dean of Operations for the school and is also a Board Member of Mariner Foundation." (Document No. 39, p. 12).

The parties agree that JDS filed trademark applications in November 2023, for Inspire Dance Company and Inspire Dance Team. (Document No. 63, p. 19). Defendants contend that the applications include false statements. (Document No. 63, p. 20). Defendants further contend that they have used the INSPIRE mark continuously since 2015, and never assigned their rights to the trademark to Winding Springs, JDS, the JDS Board, Mariner Foundation, the Mariner Foundation Board, or any other person or entity. (Document No. 63, p. 21).

In the Spring of 2024, May declined to renew her contract with JDS for the 2024-2025 school year. (Document No. 63, p. 25). "On June 26, 2024, May sent a letter from Inspire Dance Company's Gmail address to the parents of the members of the Inspire Dance Team, informing them that, just as Inspire Dance Company had moved from Windings Springs to Jackson Day School, it would again be moving to a new space." (Document No. 63, p. 25). A day later, Winstead sent a letter to "JDS Dance Families" stating, *inter alia*, that "Inspire Dance is a legal entity under Jackson Day School/Mariner Foundation" and that May and Lewis "have misled families to believe that they are an independent company that is not under the umbrella of the school." (Document No 63, p. 28).

Defendants assert that they filed an application to register the INSPIRE trademark with the United States Trademark Office on September 4, 2024," and filed an "'Extension of Time to Oppose' Mountain Island's trademark applications." (Document No. 63, p. 30). "On September 12, 2024, the state of North Carolina granted May's and Lewis's trademark registration for the INSPIRE mark." (Document No. 63, p. 31) (citing Document No. 63-1).

In conclusion, Defendants deny any wrongdoing, contend that they are the true owners of the INSPIRE marks, and seek judgment and damages against Counterclaim Defendants and Third-Party Defendants. See (Document No. 63, pp. 42-44).

**B. Procedural**

Plaintiffs initiated this action with the filing of a "Verified Complaint" (Document No. 1) on August 27, 2024. At the same time, Plaintiffs filed a "…Motion For Temporary Restraining Order And Preliminary Injunction" (Document No. 2).

The Honorable Frank D. Whitney promptly issued an Order on August 28, 2024, declining to enter a temporary restraining order and deferring a decision on preliminary injunctive relief. (Document No. 4). Judge Whitney held a motion hearing on September 9, 2024. Following the hearing, Plaintiffs filed a "Notice of Appeal" to the United States Court of Appeals for the Fourth Circuit on September 10, 2024. (Document No. 19).[3] On September 11, 2024, Judge Whitney entered a written Order denying "[f]or the reasons stated in open court" Plaintiffs' "…Motion For Temporary Restraining Order And Preliminary Injunction" (Document No. 2). (Document No. 20).

"Defendants' Answer To Plaintiffs' Complaint, Affirmative Defenses, Counterclaims And Third Party Complaint"(Document No. 28) was filed on October 28, 2024.

On November 12, 2024, Plaintiffs filed their "First Amended Complaint" (Document No. 39) (the "Complaint"). The Complaint asserts claims against Inspire Performing Arts Company, LLC ("Inspire PAC"), May, and Lewis (all together "Defendants") for: (1) Violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) Trademark Infringement and Unfair Competition; (2) Violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) False Advertising; (3) Violation of the North Carolina Unfair And Deceptive Trade Practices Act, N.C.Gen.Stat §§ 75-1.1, *et seq*; (4) Breach of Contract (Mariner Foundation against May); (5) Breach of Contract (Mariner Foundation against Lewis); (6) Breach Of Implied Covenant of Good

---

[3] To date, there does not appear to be a decision from the Fourth Circuit on Plaintiffs' appeal.

6

Faith and Fair Dealing (Mariner Foundation against May); (7) Breach Of Implied Covenant of Good Faith and Fair Dealing (Mariner Foundation against Lewis); (8) Conversion; and (9) Unjust Enrichment. (Document No. 39, pp. 22-37).

"Defendants' . . . Memorandum In Support Of Their Partial Motion To Dismiss. . ." (Document No. 50) was filed on December 10, 2024. By this pending motion, Defendants seek to dismiss Plaintiff Mariner Foundation's claims for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Conversion pursuant to Fed.R.Civ.P. 12(b)(1) and (6). (Document No. 50)

On January 29, 2025, Defendants filed their "First Amended Counterclaims And First Amended Third-Party Complaint" (Document No. 63). Defendants assert claims against Plaintiffs, the JDS Board, the Mariner Foundation Board, Tammy Winstead, and Board Members John and Jane Does 1-10 for: (1) Declaratory Judgment of Ownership of the INSPIRE marks and Non-Infringement; (2) Lanham Act False Designation of Origin and Unfair Competition; (3) North Carolina Trademark Infringement; (4) North Carolina Common Law Unfair Competition; (5) Defamation; (6) Slander; (7) Unfair and Deceptive Trade Practices; (8) Abuse of Process; and (9) Alter Ego Liability. (Document No. 63, pp. 32-42).

"Plaintiffs' And Third-Party Defendants' Motion To Dismiss First Amended Counterclaims And To Dismiss Or Strike First Amended Third-Party Claims" (Document No. 66) was filed on February 12, 2025. By this pending motion, the JDS Board of Directors, Mariner Foundation Board of Directors, Tammy Winstead ("Winstead") (together, "Third-Party Defendants"), and Plaintiffs, seek dismissal of the amended counterclaims and third-party claims pursuant to Fed.R.Civ.P 12(b)(1), and (6), 12(f) and 14(a)(4). (Document No. 66).

7

"Plaintiff Jackson Day School's And Third-Party Defendants Jackson Day School Board Of Directors's And Tammy Winstead's Motion To Dismiss…" (Document No. 70) was then filed on March 5, 2025. By this final pending motion, Plaintiff JDS and Third-Party Defendants seek dismissal of the first amended counterclaims and third-party claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

The pending motions have been fully briefed and are ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

8

(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); see also, <u>Robinson v. American Honda Motor Co., Inc.</u>, 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

<u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (quoting <u>Twombly</u>, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." <u>Mylan Labs, Inc. v. Matkar</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### A. Defendants' Partial Motion To Dismiss (Document No. 50)

Defendants May and Lewis seek dismissal of Plaintiff Mariner Foundation's claims for breach of contract (Counts IV and V), breach of implied covenant of good faith and fair dealing (Counts VI and VII), and conversion (Count VIII). (Document No. 50, pp. 1-3).

1. <u>Breach of Contract (Counts IV and V)</u>

9

The Complaint alleges that Defendants May and Lewis signed employment agreements with JDS on or about May 30, 2023, agreeing to be JDS teachers from August 2023 through June 2024. (Document No. 39, pp. 29-31).[4] The Complaint suggests that Defendants breached a valid contract by failing to abide by "the school's rules, regulations, policies and practices as amended." (Document No. 39, p. 29). Plaintiff Mariner Foundation alleges that "[t]o the extent the school's rules, regulations, policies, and practices related to Inspire Dance Team, the employment agreement was entered into for Mariner Foundation's direct, and not incidental, benefit." Id. Plaintiffs contend that Defendants breached the contract by "[a]ccepting payments from parents directly into the personal peer-to-peer payment service accounts and bank accounts . . . and not transmitting all of those funds to Mariner Foundation" and by "[p]aying dance instructors using peer-to-peer payment service accounts and bank accounts . . . rather than routing payments to dance instructors through Mariner Foundation." (Document No. 39, pp. 30-31).

In support of dismissal of the breach of contract claims, Defendants first argue that no privity of contract exists between Defendants and Mariner Foundation. (Document No. 50-1, p. 14). Defendants state:

> There is not a single document representing any sort of agreement, accord, understanding or consent for May or Lewis to be bound to Mariner Foundation. There is not a single allegation asserting the relationship among JDS and Mariner Foundation to suggest any agreement with one should benefit the other. Mariner Foundation hangs their hat on the JDS Employment Agreements entered into by both May and Lewis, but Mariner Foundation fails to state how these standard employment agreements, especially as exclusively related to May and Lewis, apply to bind May, Lewis, and Mariner Foundation.

---

[4] The Complaint does not attach the JDS Employment Agreements; however, Plaintiffs previously attached the JDS Employment Agreements to their "…Motion For Temporary Restraining Order And Preliminary Injunction" (Document No. 2). See (Document Nos. 2-10 and 2-11). Those documents show that May and Lewis actually signed JDS Employment Agreements on October 3, 2023, and November 27, 2023. Id.

(Document No. 50-1, p. 15).

Defendants note that a party asserting a breach of contract, "must show that they are either a party to the contract or a third-party beneficiary of the contract."  (Document No. 50-1, p. 16) (citing Holshouser v. Shaner Hotel Group Properties One Ltd. Partnership, 134 N.C. App. 391, 399 (1999)).  A "pleading party is a third-party beneficiary if they can show:  (1) a contract exists between two persons or entities;  (2) the contract is valid and enforceable;  and (3) the contract was executed for the direct, and not incidental, benefit of the pleading party."  Id. (citing Holshouser, 134 N.C. App. at 400).  "A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person."  Id.  Defendants note that the Holshouser case further holds that:  "[w]hen a third person seeks enforcement of a contract made between other parties, *the contract must be construed strictly against the party seeking enforcement*."  Id. (citing Holshouser, 134 N.C.App. at 399) (emphasis added by Defendants).

Defendants argue that the Complaint "wholly fails to plausibly allege the JDS Employment Agreement was executed for the *direct* benefit of Mariner Foundation."  (Document No. 50-1, pp. 16-17).  Defendants note that the JDS Employment Agreements do not mention "Mariner," "Mariner Foundation," "or make[] any reference to other school organizations or related entities." (Document No. 50-1, p. 17).  Moreover, no language in the contracts "identifies any payment, benefit, or protectible interest that Mariner Foundation can claim is enforceable against May or Lewis."  Id.

Defendants conclude that "[b]ecause Mariner Foundation fails to plausibly allege it is a third-party beneficiary to the JDS Employment Agreement, the Court should dismiss the breach

11

of contract claim and the breach of implied covenant claim that relies on the identical allegations." (Document No. 50-1, p. 18).

In addition, even if Mariner Foundation could plausibly allege it was a third-party beneficiary, Defendants argue that the Complaint fails to plausibly identify the "school's rules, regulations, policies and practices as amended" that Defendants are alleged to have violated. (Document No. 50-1, p. 19). Plaintiffs note that the Complaint does not allege what the rules, regulations, policies and practices are, who determines them, or which version "as amended" applies to the JDS Employment Agreements. Id.

Finally, Defendants contend that even if the Complaint plausibly states a breach of contract claim, there are no alleged damages. (Document No. 50-1, p. 21). Defendants conclude that "[w]ithout any cognizable damage for the alleged breach of contract, this claim fails." Id.

In response, Plaintiff Mariner Foundation notes that it is "JDS's booster club that finances the school's extracurricular activities, including its Inspire Dance Team." (Document No. 52, p. 2). The response contends that "Mariner Foundation is *expressly referenced* in the employment agreements, Doc. Nos. 2-10 and 2-11." (Document No. 52, p. 3) (emphasis added). "Moreover, *in light of the express reference to Mariner Foundation in the agreements* and the circumstances surrounding those agreements, Mariner Foundation is a third-party beneficiary that may sue May and Lewis for breach of contract and breach of the implied covenant of good faith and fair dealing. (Document No. 52, p. 5) (emphasis added).

Mariner Foundation further contends that it has alleged "damages as a direct and proximate result of May and Lewis's breach of contract and the implied covenant of good faith and fair dealing." (Document No. 52, p. 7). Plaintiff notes the Complaint alleges that:

> ("[May and Lewis's] breach of the employment agreement was
> material because Mariner Foundation suffered financial harm as a

12

> result of [May and Lewis's] actions, including but not limited to actual damages equating to the loss of payments that were directed into the personal peer-to-peer payment service accounts and bank accounts of [May and Lewis] and/or others and not transmitting all those funds to Mariner Foundation, and consequential damages incurred as a result of [May and Lewis's] unlawful actions.")

Id. (quoting Document No. 39, pp. 30-31).

Mariner Foundation also argues that it is specifically referenced in the JDS Employment Agreements where the Agreements state that "Staff may be required to attend some [Mariner] Foundation Board Meetings (PTO)." (Document No. 52, p. 8) (quoting Document No. 2-10, p. 1 and Document No. 2-11, p. 1). Plaintiff suggests that this reference is sufficient to demonstrate "that the agreements were, in fact, intended to *directly* benefit Mariner Foundation." Id. (citation omitted). Plaintiff argues that attendance "at Mariner Foundation's PTO meetings directly benefits Mariner Foundation by showing support for the PTO and by providing valued input into topics discussed at PTO meetings." (Document No. 52, p. 9).

Plaintiff Mariner Foundation further asserts that nothing in the Employment Agreements "limited the scope" of Defendants' obligations to follow "the school's rules, regulations, policies and practices" and that the Employment Agreements required May and Lewis to "perform all duties assigned by the Head of School or his designee," which include Defendants' "work as directors of the extracurricular Inspire Dance Team." (Document No. 52, p. 10) (citing Document Nos. 2-10 and 2-11). Mariner Foundation then suggests that Defendants' processing of parent payments related to the Inspire Dance Team was inconsistent with "the school's rules, regulations, policies and practices." Id. Mariner Foundation contends that if Defendants followed "the school's rules, regulations, policies and practices," "Mariner Foundation would *directly* benefit from the employment agreements." (Document No. 52, p. 11).

Plaintiff Mariner Foundation concludes that it "has sufficiently alleged that it is a third-party beneficiary of the employment agreements between JDS and" and Defendants. (Document No. 52, p. 12).

In their reply, Defendants first argue that "[b]y the express terms, the JDS Employment Agreements are limited to Defendants' roles as 'Teachers,' and the contracts only cover 'said professional services.'" (Document No. 53, p. 3) (citing Document Nos. 2-10 and 2-11). Defendants note that "[n]othing in the JDS Employment Agreements reference a stipend or other additional compensation beyond the annual salary for teaching; nothing refers to any professional services related to dance coach, dance instructor, or dance team director; and nothing references responsibilities – or even *opportunities* – related to extracurricular activities." Id. Defendants argue that "because Mariner Foundation's breach of contract claims rest on Defendants' role as dance coaches and instructors—positions separate and apart from Defendants' role as teachers— the JDS Employment Agreements do not apply and do not confer a legally enforceable benefit on Mariner Foundation." Id.

Defendants further argue that considering the language of the agreements and the surrounding circumstances, the statement that "Defendants 'may be required to attend some [Mariner] Foundation Board Meetings'—along with 'Festivals, Valentine's Day Dance, Fundraisers,' and other school events—is insufficient to plausibly suggest the parties intended to directly benefit Mariner Foundation." (Document No. 53, p. 4). Defendants state that "the contracting parties' intent was not to confer a direct benefit upon the Mariner Foundation." Id.

Next, Defendants note that the Complaint contends that "[t]he *school* additionally paid [Defendants] a stipend to run Mariner Foundation's afterschool, extracurricular Inspire Dance Team." Id. (citing Document No. 39, pp. 29, 31). Defendants argue that by paying a stipend, that

14

is not mentioned in the JDS Employment Agreements, for extracurricular activities that are also not mentioned in the JDS Employment Agreements, the Complaint suggests that a separate agreement actually governed Defendants' relationship with Mariner Foundation. Id.

Defendants conclude that, at best, the JDS Employment Agreements "conferred an *incidental* benefit to Mariner Foundation," but "nothing suggests May or Lewis *intended* Mariner Foundation to receive a direct benefit as part of their JDS Employment Agreement." (Document No. 53, pp. 4-5) (citing Blis Day Spa, LLC v. Hartford Ins. Group, 3:04-CV-231-RJC-DCK, 427 F.Supp.2d 621, 637 (W.D.N.C. 2006) ("The most significant factor as to the rights of a third-party beneficiary is that both contracting parties intended that a third party should receive a benefit that might be enforced in the courts. It is not enough that only one of the parties to the contract and the third party intended that the third party should be a beneficiary.").

The undersigned finds Defendants' arguments that Plaintiff Mariner Foundation has failed to make sufficient factual allegations to support a claim for breach of contract to be most compelling. Mariner Foundation's argument that it was intended by the parties to be a direct beneficiary of the JDS Employment Agreements is unavailing and inconsistent with the terms of the JDS Employment Agreements. See (Document Nos. 2-10 and 2-11).

Defendants correctly note that there is no mention of "Mariner" or "Mariner Foundation" in the JDS Employment Agreements. At most, Mariner Foundation receives a passing reference in the provision that "[s]taff *may* be required to attend some Foundation Board Meetings (PTO)." See (Document Nos. 2-10 and 2-11). The plain language of the Agreements indicates that meeting attendance was not *necessarily* a requirement, and the JDS Employment Agreements do not identify, or even suggest, any other obligations or commitments to Mariner Foundation. Id. In contrast, the preceding sentence in the JDS Employment Agreements is more precise that teachers

15

will attend Open Houses, Festivals, Valentine's Day Dance, etc. Id. Moreover, attendance at PTO meetings, even if required, is a vastly different obligation than the contractual obligations Mariner Foundation seeks to read into the JDS Employment Agreements and now impose on Defendants.

In short, the JDS Employment Agreements are indisputably contracts for teaching positions and any benefit to the school's booster club is incidental. (Document Nos. 2-10 and 2-11). A provision that the "agreement incorporates the school's rules, regulations, policies and practices as amended" does not plausibly support a finding that Mariner Foundation was intended to be a direct beneficiary of the contracts. See (Document No. 2-10, p. 2; Document No. 2-11, p. 2).

Based on the foregoing, including Defendants' persuasive arguments and authority, the undersigned will recommend that Plaintiff Mariner Foundation's breach of contract claims (Counts IV and V) be dismissed.

2. Breach of Covenant of Good Faith and Fair Dealing (Counts VI and VII)

Next, Defendants argue that Plaintiff Mariner Foundation's claims for breach of implied covenant of good faith and fair dealing should be dismissed. (Document No. 50-1, p. 22). Defendants first note that "North Carolina law provides that '[a] defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract.'" Id. (citations omitted).

Defendants assert, based on their previous arguments, that there is no agreement between Mariner Foundation and May and Lewis; therefore, "absent allegations supporting breach of a valid agreement, there can be no breach of the covenant of good faith and fair dealing." (Document No. 50-1, pp. 22-23) (citing McDonald v. Bank of New York Mellon Tr. Co., Natl. Assn., 259 N.C. App. 582, 585-588 (2018)).

16

Defendants also argue that there can be no breach of the covenant of good faith and fair dealing where a party to the agreement is not injured. (Document No. 50-1, p. 23). Defendants observe that the JDS Employment Agreements were between JDS and May and Lewis, and that the Complaint does not allege Mariner Foundation is a party to either Employment Agreement. Id. As such, Defendants conclude that "the harm alleged to have been felt by Mariner Foundation cannot be transferred to Jackson Day School" and thus "Mariner Foundation fails to allege a breach of any covenant of good faith and fair dealing with respect to the respective Employment Agreements." (Document No. 50-1, p. 24).

In response, Plaintiff Mariner Foundation notes that "all parties to an enforceable contract must act under the implied covenant of good faith and fair dealing." (Document No. 52, p. 4) (citing Maglione v. Aegis Family Health Centers, 68 N.C.App. 49, 56-57 (2005)). Plaintiff further notes that "[t]he implied covenant imposes an 'agreement that neither party will do anything which will destroy or injure the right of the other to receive the benefits of the agreement.'" Id. Plaintiff concludes that it has standing to assert a claim for breach of contract and breach of the implied covenant of good faith and fair dealing "in light of the express reference to Mariner Foundation in the agreements and the circumstances surrounding those agreements." (Document No. 52, p. 5).

Plaintiff's response does not appear to otherwise address Defendants' arguments for dismissal of this claim. (Document No. 52). Certainly, there is no dispute from Plaintiff that there is no breach of the implied covenant of good faith and fair dealing where there is no breach of a valid contract. Id.

Defendants' reply brief does not provide any additional argument in support of dismissing this claim. (Document No. 53).

As noted above, the undersigned is not persuaded that Plaintiff Mariner Foundation has adequately alleged that it is a party or a third-party beneficiary to the JDS Employment Agreements with Defendants May and Lewis. Based on Defendants' arguments and authority, the undersigned is also not persuaded that Plaintiff has adequately alleged a breach of the implied covenant of good faith and fair dealing. The undersigned will respectfully recommend that Plaintiff Mariner Foundations' breach of implied covenant of good faith and fair dealing claims (Counts VI and VII) be dismissed.

3. Conversion (Count VIII)

Finally, Defendants argue that Plaintiff's claim for conversion should be dismissed. (Document No. 50-1, pp. 24-26).

The parties agree that "[u]nder North Carolina law, the tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." (Document No. 50-1, p. 24) (citing Noble Bottling, LLC v. Reinhart Holdings, LLC, 3:22-CV-083-KDB-DCK, 2022 WL 3039771, at *6 (W.D.N.C. August 1, 2022) (citing Stitz v. Smith, 272 N.C.App. 415, 419, (2020)). See also (Document No. 52, p. 14). In Noble Bottling, this Court further addressed conversion explaining:

> "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort. When demand is made, and absolute, unqualified refusal to surrender, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, it is of course a conversion." *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983) (quoting Prosser, The Law of Torts 4th, § 15 at pp. 89–90 (1971)).
>
> Accordingly, the "two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a

18

> wrongful conversion by the defendant." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 489 (2008)

Noble Bottling, LLC, 2022 WL 3039771, at *6.

Defendants acknowledge that "Mariner Foundation goes through great lengths to try and explain how May and Lewis allegedly took funds from Mariner Foundation and should be held liable for conversion," but Defendants then suggest that Plaintiff has failed to allege that the funds May and Lewis received were not "for the services they rendered as dance instructors." (Document No. 50-1, pp. 24-25. Defendants argue that Plaintiff has not adequately alleged that they *wrongfully* took funds and/or that Plaintiff demanded a return of the funds. (Document No. 50-1, p. 25). Defendants seem to contend that there is no "wrongful taking" if the funds they received were owed to them. Id.

In response, Plaintiff Mariner Foundation argues that it has adequately "alleged facts demonstrating that it was the owner of the money." (Document No. 52, pp. 15-16). Moreover, Plaintiff contends that it "included many factual allegations in the FAC that May and Lewis committed a wrongful possession of Mariner Foundation's funds in connection with money paid by parents of Inspire Dance Team students for that extracurricular activity." (Document No. 52, pp. 16-18) (quoting Document No. 39).

In reply, Defendants contend that Plaintiff has failed to argue or allege that "Defendants failed to return any alleged wrongfully obtained funds, as is required to sustain a claim for conversion." (Document No. 53, p. 6) (citation omitted). Defendants further contend that "Plaintiffs fail to offer any explanation for the Amended Complaint's allegations that notwithstanding knowledge of Defendants' alleged failure to follow payment procedures for

certain dance team payments in the late fall of 2023, JDS *continued* to employ May and Lewis and Mariner Foundation and *continued* to pay a stipend for their positions with the dance team." Id.

Defendants conclude that the Complaint "fails to plausibly allege any 'wrongful taking' to support a conversion claim."

Here, the undersigned finds Plaintiff Mariner Foundation's argument to be more persuasive. The Complaint does allege that Mariner Foundation was "entitled to immediate possession of those funds" paid by parents "for students to participate with the Inspire Dance Team" and that Defendants accepted the disputed payment into personal accounts and failed or refused to "transmit all those funds to Mariner Foundation, including after Mariner Foundation made a demand for those funds." (Document No. 39, p. 35).

Plaintiff Mariner Foundation's allegations are sufficient for its conversion claim to survive at this stage of the litigation. Contrary to Defendants' arguments, it appears that Plaintiff has adequately alleged that Defendants failed to return wrongfully retained funds. Whether or not Defendants were actually entitled to some (or all) of those funds, or why Defendants continued to be employed despite alleged conversion, are questions that should be subjected to further development through discovery. For now, it appears that Plaintiff has alleged enough facts to support a plausible claim.

Based on the foregoing, the undersigned will recommend that Defendants' motion to dismiss Plaintiff Mariner Foundation's claim for conversion (Count VIII) be denied, without prejudice to Defendants raising their arguments again at a later date in this litigation.

**B. Plaintiffs' and Third-Party Defendants' Motion To Dismiss (Document No. 66)**

By this motion, Plaintiffs JDS and Mariner Foundation ("Plaintiffs"), and Third-Party Defendants JDS Board of Directors, Mariner Foundation Board of Directors and Tammy Winstead

20

("Third-Party Defendants") (all together, "Movants"), seek the dismissal of specified counterclaims and *all* third-party claims. (Document No. 66).

     1. <u>Lack of Subject Matter Jurisdiction – Claims 4 and 7-9</u>

         a. *Fourth Claim – North Carolina Common Law Unfair Competition*

First, Movants assert that Inspire Performing Arts Company, LLC "Inspire PAC" lacks standing to assert a claim for common law unfair competition regarding trademark infringement. (Document No. 67, p. 5). Movants note that:

> The tort of common law unfair competition is recognized "as an offense committed in the context of competition between business rivals." *Henderson v. U.S. Fidelity & Guar. Co.*, 488 S.E.2d 234, 239 (N.C. 1997). "The gravamen of unfair competition is the protection of a business from misappropriation of its commercial advantage earned through organization, skill, labor, and money." *Id.* at 240.

(Document No. 67, p. 5).

Movants further note that Defendants state that "May and Lewis are the sole owners of all rights in the INSPIRE trademark," and that they "never assigned their rights in the INSPIRE trademark to . . . *any other entity or person*." (Document No. 67, p. 6) (quoting Document No. 63, p. 21). Movants contend that as a consequence of the foregoing, Inspire PAC is not an owner or assignee of the trademark in question, and therefore, lacks standing to bring a claim for common law unfair competition "insofar as Inspire PAC asserts that claim." <u>Id.</u>

In response, Defendants assert that aside from "the plausibility that Inspire PAC, as a licensee, might have rights related to trademark under a common law unfair competition claim," such a claim is not only applicable in the context of trademark infringement. (Document No. 68, p. 11) (citations omitted). Rather, "North Carolina law allows common law unfair competition claims based on misrepresentations . . . and tortious interference with contract." <u>Id.</u> (citations

21

omitted).   Defendants argue that "unfair acts include the School Entities' actions that have damaged Defendants' legitimate business activities" such as "the School Entities' and Winstead's efforts to prevent and deter students from attending Inspire PAC."  (Document No. 68, p. 11).

In reply, Movants re-assert "that Inspire PAC is neither the owner nor assignee of the mark," and therefore, "*to the extent the claim regards trademark infringement*, it should be dismissed as to Inspire PAC for lack of standing."  (Document No. 69, p. 2) (emphasis added).

It appears to the undersigned that Movants are attempting to dismiss a claim, as to one of three Defendants, *only* "to the extent" it asserts a trademark infringement claim, which on its face it does not assert.  See (Document No. 63, p. 36).  Defendants' first three claims relate to trademark, but the fourth claim does not.   (Document No. 63).   The undersigned will recommend that dismissal of Defendants' Fourth Claim be denied.

> b.  *Fourth Claim – North Carolina Common Law Unfair Competition;  Seventh Claim – UDTPA;  Eighth Claim – Abuse of Process;  and Ninth Claim – Alter Ego Liability*

Next, Movants argue that the Court lacks supplemental jurisdiction over Claims 4 and 7-9. (Document No. 67, pp. 6-11).  Movants provide the following instructive authority.

> If a counterclaim is compulsory under Fed.R.Civ.P. 13(a), *i.e.*, it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," then it also meets the legal standard for supplemental jurisdiction, *i.e.*, the claims "derive from a common nucleus of operative fact."  *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).  The courts ask four questions to determine whether a counterclaim is compulsory:  "(1) Are the issues of fact and law raised in the claim and counterclaim largely the same?  (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?  (3) Will substantially the same evidence support or refute the claim as well as the counterclaim?   and (4) Is there any logical relationship between the claim and counterclaim?"  *Id.*  Notably, "[a] court need not answer all these questions in the affirmative for the counterclaim to be compulsory."  *Id.*  "Rather, the tests are less a litmus, more a guideline."  *Id.*

(Document No. 67, p. 8).

Movants contend that the Common Law Unfair Competition claim lacks "*any* specific facts comprising the claim." Here, Movants seek dismissal of the Fourth Claim for Common Law Unfair Competition "*to the extent* that it alleges a misappropriation of commercial advantage as a result of facts *other than those alleging trademark infringement*." (Document No. 67, p. 10) (emphasis added).

Next, Movants assert that the Seventh (UDTPA) and Eighth (Abuse of Process) claims each allege two different claims against two different sets of entities. Id. Movants contend that both claims fail because they "do not derive from a common nucleus of operative fact." (Document No. 67, p. 11) (citing Painter, 863 F.2d at 333). Movants conclude that "to the extent [these claims] allege conduct taken in the instant action for an improper purpose," they "should be dismissed for lack of supplemental jurisdiction." Id.

Movants argue that the Ninth Claim (Alter Ego Liability) should be dismissed, like the Fourth Claim, "to the extent it alleges liability as a result of facts other than those alleging trademark infringement." (Document No. 67, p. 11). Movants further argue that, like Claims 7 and 8, this claim should be dismissed "for lack of supplemental jurisdiction to the extent it alleges conduct taken in the instant action for an improper purpose." Id.

In response, Defendants note that the parties agree as to the applicability of the Painter questions "in order to determine whether the claims 'derive from a common nucleus of operative fact.'" (Document No. 68, p. 12). Defendants further note that "this Court has recognized that 'A counterclaim may still arise from the same transaction or occurrence as a logically related claim even though the evidence needed to prove the opposing claims may be quite different.'" Id.

(quoting OPTO Elecs. Co. v. Honeywell Int'l Inc., 3:24-CV-493-KDB-DCK, 2024 WL 4198014, at *5 (W.D.N.C. Sept. 13, 2024)).

Next, Defendants "concede supplemental jurisdiction over the Abuse of Process Claim is not appropriate under the current record." Id. Defendants acknowledge that supplemental jurisdiction is inappropriate "because the claim requires conduct *following* the filing of a civil action with an ulterior motive." (Document No. 68, p. 13).

Defendants contend that the Common Law Unfair Competition claim is compulsory, as it related to Inspire PAC, unless the Court also dismisses Plaintiffs' breach of contract, breach of implied covenant of good faith, *and* conversion claims. Id. According to Defendants, "*Painter* instructs that Claim 4 is compulsory because the issues of fact and law raised in the claim and counterclaim are largely the same as Plaintiffs' claims, involve substantially the same evidence, and a logical relationship exists." (Document No. 68, p. 14).

Regarding the Seventh Claim, Defendants argue that Painter again instructs that it is compulsory. Id. Defendants assert that where a "party has sufficiently alleged a Lanham Act infringement claim, it has also sufficiently alleged a North Carolina UDTPA claim." (Document No. 68, pp. 14-15) (citing Camco Mfg., Inc. v. Jones Stephens Corp., 391 F.Supp.3d 515, 528 (M.D.N.C. 2019)).

Defendants also argue that the Ninth Claim (Alter Ego Liability) should not be dismissed. (Document No. 68, p. 15). Defendants argue that "[f]or the same reasons described above, this Court should not dismiss this claim for lack of supplemental jurisdiction to the extent it alleges liability as a result of facts other than those alleging trademark infringement, including those claims arising out of the same nucleus of common facts as Plaintiffs' breach of contract, breach of covenant of good faith and fair dealing, and conversion claims." Id.

After careful consideration of the parties' arguments, including Movants' reply brief, the undersigned is persuaded that the motion to dismiss Defendants' Fourth, Seventh, and Ninth Claims should be denied without prejudice at this stage of the litigation. Based on Defendants' concession, the undersigned will recommend that the motion be granted as to Defendants' Eighth Claim (Abuse Of Process).

### 2. Failure to State a Claim Upon Which Relief Can be Granted – Claims 1-9

The second part of Movants' "…Brief In Support…" argues that *all* of Defendants' third-party claims should be dismissed pursuant to Rule 12(b)6), 12(f) and/or 14(a)(4). (Document No. 67, pp. 12-30). The crux of Movants' argument is that the third-party claims are improperly brought and should be stricken pursuant to Rule 14 which provides that: "[a]ny party may move to strike the third-party claim. . ." where the claim does not comply with Rule 14(a)(1)'s requirement that the claim allege the nonparty is or may be liable to the third-party plaintiff for all or part of the plaintiff's claims against it." (Document No. 67, p. 12) (quoting Fed.R.Civ.P. 14(a)(4)). Movants argue that:

> All of the third-party claims against Third-Party Defendants JDS Board, Mariner Foundation Board, and Winstead – which are contained within all nine of the claims – should be dismissed or stricken for improper impleader because they do not satisfy the requirement that third-party claims be filed against a nonparty "who is or may be liable to it for all or part of the claim against it." Fed.R.Civ.P. 14(a)(1). "It is manifest from the language of the rule that the third-party claim must be dependent on or related to the initial plaintiff's claim against the defendant." *Scott v. PPG Indus., Inc.*, 920 F.2d 927 (Table), No. 89-2362, 1990 WL 200655, at *3 (4th Cir. Dec. 13, 1990). A "third-party claim must be 'derivative' of the plaintiff's claim for '[d]erivative liability is central to the operation of Rule 14.'" *Id.* (quoting *Watergate Landmark Condominium Unit Owners' Association v. Wiss, Janey, Elstner Associates, Inc.*, 117 F.R.D. 576, 578 (E.D.Va. 1987)); *see United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983) ("[A] third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the

main claim and the third party's liability is secondary or derivative.").

(Document No. 67, p. 13).

Movants further argue that *none* of Defendants' nine third-party claims satisfy Rule 14(a)(1), because none of them are based on a derivative theory of liability, such as indemnification or contribution; instead, all the third-party claims are based on theories of liability that are not dependent on Defendants' liability for the claims brought against Defendants. (Document No.67, p. 14). Movants contend that it is not relevant that some of the third-party claims may arise out of the same transaction or occurrence as Plaintiffs' claims. Id. (citing One 1977 Mercedes Benz, 708 F.2d at 452 ("It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim.").

Next, Movants assert that Defendants' theory that Plaintiffs JDS and Mariner Foundation are the alter egos of Third-Party Defendants and that Third-Party Defendants are, therefore, liable under a veil piercing avenue to pursue claims, is also improper under Rule 14(a)(1). Id. Movants conclude that "[c]laims asserted by a third-party plaintiff against a third-party defendant based on allegations that the plaintiff is the alter ego of the third-party defendant are not derivative claims and, thus, should be dismissed." Id. (citing Hammerhead Constr., LLC v. Hoffman, 2024 WL 1347580, at *2 (D.V.I. Mar. 30, 2024) and Tasty One, LLC v. Earth Smarte Water, LLC, 2022 WL 3716689, at *2 (D.Nev. Feb. 26, 2022).

Based on the foregoing, Movants ask the Court to dismiss Third-Party Claims 1-9 against all Third-Party Defendants, as well as John and Jane Does 1-10. (Document No 67, p. 15).

In response, Defendants contend that dismissal of the JDS Board of Directors ("JDS Board") and the Mariner Foundation Board of Directors ("Mariner Board") (together the "School Entities") and Winstead (all together "Third-Party Defendants") under Rule 14 is "not

appropriate." (Document No. 68, p. 15). Defendants further contend that Fed.R.Civ.P. 13, 19, and 20, "permit – if not require – the joinder of the Third-Party Defendants, and Defendants' Third-Party Claims should be redesignated as Counterclaims." Id.

Defendants assert that Rule 13's "purpose is to join claims in one suit so that disposition of the action will grant complete relief to all the concerned parties." (Document No. 68, p. 16) (quoting Redox Tech, LLC v. Earthworks Sols. LLC, 2018 WL 1733984, at *5 (E.D.N.C. Apr. 10, 2018)). Relying on Redox, Defendants further assert that "joinder is permitted pursuant to Rule 13(h), and leave to join the additional party is unnecessary." Id. (also citing Stonecrest Partners, LLC v. Bank of Hampton Roads, 2011 WL 3664412, at *4 (E.D.N.C. Aug. 18, 2011) (applying Fed.R.Civ.P. 13, 19, and 20, redesignating the defendants' third-party claim as a counterclaim, and denying motion to dismiss)).

Next, Defendants suggest that Third-Party Defendants *must* be joined pursuant to Fed.R.Civ.P. 19, so that the Court can "accord complete relief among existing parties." (Document No. 68, p. 16) (quoting Fed.R.Civ.P. 19(a)(1)(A)). Defendants argue that complete relief among the existing parties is not possible without Third-Party Defendants because "Plaintiffs do not have the power to bestow the requested relief upon Defendants." (Document No. 68, p. 17) (citations omitted). Moreover, Defendants contend that Plaintiffs JDS and Mariner Foundation cannot act without their respective Board of Directors, so "the Boards must be joined as parties here." (Document No. 68, p. 18).

Defendants conclude that "[b]ecause the School Entities and Winstead are necessary parties pursuant to the allegations in the Amended Counterclaims and Complaint pursuant to Rules 13, 19, and 20 of the Federal Rules of Civil Procedure, redesignation of the third-party claims as

counterclaims is appropriate, and the motion to dismiss should be denied." (Document No. 68, p. 19).

In reply, Movants observe that Defendants acknowledge, without expressly admitting, that they have "engaged in improper impleader under Rule 14(a)(1)." (Document No. 69, p. 5). Movants argue that Defendants "have engaged in improper impleader three times which has caused delays and increased attorney fees." Id. Movants contend that Defendants' "proposed avenue to pursue legal claims against Third-Party Defendants, *i.e.*, the doctrine of piercing the corporate veil, lacks merit because they have not alleged facts that JDS and Mariner Foundation failed to observe corporate formalities or other facts sufficiently alleging that they are the alter egos of Third-Party Defendants." (Document No. 69, pp. 5-6).

In addition, Movants allege that "the third-party claims were always about one thing and one thing only – an attempt to access proceeds from JDS's and Mariner Foundation's liability insurance policies under the false belief that the only way to do so was to sue their boards of directors and Winstead." (Document No. 69, p. 7). However, Movants contend that JDS "serves as its own local educational agency ("LEA") and can sue and be sued." (Document No. 69, p. 8). Moreover, Defendants "have no argument at all that [Mariner Foundation] lacks the power to bestow the requested relief upon Defendants."

The undersigned finds that Movants present an interesting, and at least in the undersigned's experience, an uncommon argument pursuant to Fed.R.Civ.P. 14(a). Importantly, Defendants fail to refute Movants' arguments pursuant to Rule 14; instead, Defendants suggest that the Court should redesignate Defendants' third-party claims as counterclaims, pursuant to Rules 13, 19, and 20.

The undersigned construes Defendants' request for redesignation of their Claims under Rules 13, 19, and 20, as essentially a motion to amend. Pursuant to the Local Rules of this Court, "motions" are not to be included in responsive briefs. See LCvR 7.1(c)(2). Assuming Movants' argument pursuant to Rule 14 is not misplaced, it might have been better if Defendants filed a separate motion seeking appropriate relief several months ago.

While Defendants provide some caselaw suggesting the redesignation they seek is permissible, the undersigned is not convinced based on the arguments on this issue, and other alleged deficiencies in the "First Amended Counterclaims And First Amended Third-Party Complaint," that the Court should unilaterally modify Defendants' claims at this stage of the litigation. Instead, the undersigned is persuaded that the better course is for the Court to grant Movants' motion to dismiss as to the Third-Party Defendants and Third-Party Claims, without prejudice to Defendants filing an appropriate motion for joinder and/or amendment at a later date, if necessary.

In fact, after the Court resolves the pending motions to dismiss, it may be useful for both sides to be allowed to file amended pleadings that are consistent with the Court's decision and presumably narrow the issues and/or parties.

Regarding Movants' remaining arguments for dismissal – the undersigned finds that they are moot to the extent they assert additional arguments for dismissing Third-Party Defendants and Third-Party Claims. (Document No. 66, pp. 16-30). To the extent the remaining arguments address Defendants' Counterclaims, the undersigned is *not* persuaded that the Counterclaims should be dismissed at this stage of the litigation, except as to the Abuse of Process claim and Alter Ego Liability claim, which Defendants seem to concede. See (Document No. 68, pp. 12-13, 30).

29

Based on the foregoing, the undersigned will recommend that "Plaintiffs' And Third-Party Defendants' Motion To Dismiss… (Document No. 66) be <u>granted</u> as to the Third-Party Defendants and Third-Party Claims (1-9), the Eighth Counterclaim for Abuse of Process, and the Ninth Counterclaim for Alter Ego Liability, and otherwise <u>denied</u>.

## C. Plaintiff Jackson Day School's and Third-Party Defendants Jackson Day School Board of Directors' and Tammy Winstead's Motion to Dismiss (Document No. 70).

The third and final motion to dismiss pending before the Court in this case seeks dismissal of Defendants' Counterclaims and Third-Party Claims 3, 4, 7, 8, and 9, against Plaintiff JDS and Third-Party Defendants JDS Board and Winstead for lack of subject matter jurisdiction due to governmental immunity. If adopted, the undersigned's recommendation as to Movants' previous Motion To Dismiss, will moot the claims against Third-Party Defendants JDS Board and Winstead, as well as Claims 8 and 9 – which would already be dismissed. Therefore, the remaining issue seems to be whether this motion to dismiss should be granted as to Claims 3, 4, and 7, as asserted against Plaintiff JDS.

The motion contends that JDS, as a public charter school, has "governmental immunity for those claims for which [its] conduct is not covered by a liability insurance policy." (Document No. 70, pp. 1-2). Movants acknowledge that they "have purchased liability insurance," "but only to a limited extent." (Document No. 71, pp. 6-7). Movants indicate that they have submitted a claim to Evanston Insurance Company ("Evanston") based on Defendants' allegations and claims. Apparently, Evanston

> "has agreed to defend and potentially indemnify . . . based on the causes of action of 'defamation' and slander . . . ." [but] has made it clear that no insurance coverage exists for the claims of North Carolina trademark infringement (Claim 3), unfair competition (Claim 4), unfair and deceptive trade practices (Claim 7), abuse of process (Claim 8), and "alter ego liability" (Claim 9).

30

(Document No. 71, p. 7 (citations omitted).

Based on the purported insurance coverage from Evanston, JDS contends that it has "not waived governmental immunity as to North Carolina trademark infringement (Claim 3), unfair competition (Claim 4), unfair and deceptive trade practices (Claim 7), abuse of process (Claim 8); and alter ego liability (Claim 9)," and therefore, those claims must be dismissed for lack of subject matter jurisdiction due to governmental immunity.

In response, Defendants first assert that governmental immunity "doesn't apply to such clearly nongovernmental functions—like operating a dance team, and the Motion should be denied." (Document No. 75, p. 6).  More specifically, Defendants argue that "the activity at issue is proprietary in nature and outside the scope of the governmental immunity protection." Document No. 75, p. 7).  Defendants contend:

> As a general rule, governmental immunity applies—meaning the state and its governmental subsidiaries are immune from tort, contractual, and equitable liability—only where "the government entity was acting in a government function" as opposed to in a proprietary function. *McIver v. Smith*, 518 S.E.2d 522, 524 (N.C. App. 1999) (emphasis added); *see also AGI Assocs., LLC v. City of Hickory, N.C.*, 773 F.3d 576 (4th Cir. 2014).

(Document No. 75, pp. 8-9).

Defendants contend that the claims at issue here are related to the operation of a dance team, and therefore, are not a government function.  (Document No. 75, p. 10).  Defendants note that an activity is a governmental function where it is "'discretionary, political, legislative, or public in nature' and 'performed for the public good [o]n behalf of the State rather than for itself.'" Id. (citing Britt v. City of Wilmington, 73 S.E.2d 289, 293 (N.C. 1952)).  If an "activity is 'commercial or chiefly for the private advantage of a compact community[,]' the activity is deemed proprietary and does not enjoy the same protection of governmental immunity."  Id.

31

Defendants go on to note that North Carolina courts employ a test to determine whether a function is proprietary or governmental. (Document No. 75, p. 11). According to Defendants, "the threshold inquiry in determining whether a function is proprietary or governmental is whether, and to what degree, the legislature has addressed the issue." Id. (quoting Est. of Williams ex rel. Overton v. Pasquotank Cnty. Parks & Recreation Dep't, 732 S.E.2d 137, 141–42 (N.C. 2012)). Also relevant to the inquiry is "whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider." (Document No. 75, p. 12) (citing Williams, 732 S.E.2d at 143). In Williams, "the Supreme Court of North Carolina held, 'Consequently, the proper designation of a particular action of a county or municipality is a fact intensive inquiry, turning on the facts alleged in the complaint, and may differ from case to case.'" Id.

Defendants contend that "JDS concedes it operates its dance team with another entity (that apparently retains the revenues) and therefore cannot possibly claim it engages in a governmental function with its operation of the dance team." (Document No. 75, p. 14). Defendants further contend regarding JDS' operation of a dance team that "any corporation, [or] individuals could do the same thing." Id. (citing Britt, 73 S.E.2d at 293). Defendants suggest this lawsuit supports such a finding "as evident by the fact that *Plaintiffs* brought related claims against a private corporation and individuals." Id. Defendants conclude that both sides' allegations "conclusively demonstrate the underlying activity represents a proprietary – not governmental – function." (Document No. 75, p. 15).

In reply, Movants argue that JDS' operation of its extracurricular Inspire Dance Team is a governmental function. (Document No. 76, p. 2). Movants agree on the application of the Williams case to this issue. See (Document No. 76, p. 3).

Regarding the first inquiry, Movants note that "the North Carolina legislature has repeatedly addressed public school athletics, including athletics for charter schools." (Document No. 76, p. 3). Movants contend that the first criteria supports a finding of governmental function. Id.

Movant observes that the second step is "to determine whether the activity 'is one in which only a governmental agency could engage' or provide, in which case 'it is perforce governmental in nature.'" (Document No. 76, p. 4) (citing Providence, 876 S.E.2d at 462 (quoting Estate of Williams, 732 S.E.2d at 142)). Moreover, due to "limitations in our changing world," Movants assert that this step requires consideration of other factors when an activity may be performed both privately and publicly: whether the service is traditionally a service provided by a governmental entity; whether a substantial fee is charged for the service provided; and whether that fee does more than simply cover the operating costs of the service provider. Id.

Movants argue that extracurricular activities are traditionally provided by governmental entities, such as schools. (Document No. 76, p. 5). Movants then acknowledge that JDS charges a fee to parents for the Inspire Dance Team that is paid to Mariner Foundation, but assert it is not substantial and simply covers Mariner Foundation's costs. (Document No. 76, p. 6).

Movants conclude that the Williams factors support a finding that JDS' extracurricular Inspire Dance Team is a governmental function. (Document No. 76, pp. 6-10).

Defendants filed a surreply in further opposition to Movants' motion to dismiss. (Document No. 81). Defendants first argue that "JDS does not operate its dance team as an athletic

33

team but as a joint venture with Mariner Foundation. (Document No. 81, p. 3). Defendants argue that dismissal is not appropriate, at minimum, until the Court has a more fulsome evidentiary record. Id.

According to Defendants, unlike other JDS athletic teams the dance team does not operate under the "Mariners" name – and in fact filed a trademark application for its own name. (Document No 81, p. 5). And the dance team requires payment to participate, including payment for solo lesson and routines, whereas other JDS teams do not require payment. Id.

Defendants also note that although Movants suggests fees are just to cover costs, they seek "actual damages" in this lawsuit, including "a fair share of revenues and profits." Id. "In whole, JDS's allegations make clear the dance team operated beyond the governmental function of an athletic team and instead as a proprietary business function." (Document No. 81, p. 6).

Defendants also argue in the surreply that even if governmental immunity applies, "the Insurer's denial of coverage does not obviate the Court's duty to interpret the policy, and interpretation of the insurance policy shows the JDS Entities waived immunity for claims related to their use of Inspire in their advertisements." (Document No. 81, p. 7). Defendants further argue that

> the insurer's denial of coverage, in and of itself, is neither binding upon the Court nor determinative of the legal effect of the policy. Insurers may deny coverage for a variety of reasons, including mistaken interpretations of policy language, overly broad reservations of rights, or strategic considerations unrelated to the actual obligations imposed under the policy. To rely solely on the insurer's denial would improperly elevate the insurer's view over the judicial function of interpreting contracts. And, notably, in accordance with the terms of the policy, the insurer has acknowledged its obligation to defend all claims, not merely those related to slander and defamation, and the insurer indicates that notwithstanding its reservation of rights, it "agrees to participate in the defense and indemnity of this Claim . . . [and it's] investigation

34

is ongoing, and this letter is based on presently available information." (Doc. 71-1).

(Document No. 81, p. 8).

Defendants conclude that dismissal of these claims for lack of subject matter jurisdiction is inappropriate under this record. (Document No. 81, p. 12). Defendants insist that "the operation of a dance team does not constitute a governmental function and, accordingly, governmental immunity does not apply.

The undersigned finds that this motion presents a close call but should be denied, without prejudice to Movants re-asserting their arguments in a later dispositive motion, if further development of the record supports such action. While Movants persuasively argue that the Inspire Dance Team is similar to other school athletic teams, there are other facts and/or factual disputes suggesting that Inspire Dance Team is unique and not properly cast as a governmental function. For example, questions surrounding the history, leadership, financing, trademark rights, profits or lack thereof, and the school's affiliation/control of the Inspire Dance Team are intertwined with many of the issues in this case. It is unlikely that such questions regarding Mariner athletic teams such as soccer, basketball, or volleyball are unresolved. The undersigned is persuaded that it would be premature at this stage to find that governmental immunity applies to the Movants and will therefore recommend that Movants' motion to dismiss for lack of subject matter due to governmental immunity be denied without prejudice.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' . . . Memorandum In Support Of Their Partial Motion To Dismiss. . ." (Document No. 50) be **GRANTED in part** and **DENIED in part**. As described herein, Counts IV, V, VI, and VII should be dismissed; and Count VIII should survive dismissal at this stage of the litigation.

35

**IT IS FURTHER RECOMMENDED** that "Plaintiffs' And Third-Party Defendants' Motion To Dismiss First Amended Counterclaims And To Dismiss Or Strike First Amended Third-Party Claims" (Document No. 66) be **GRANTED in part** and **DENIED in part**. As described herein, Third-Party Defendants and Third-Party Claims 1-9, as well as Counterclaims 8-9, should be dismissed, otherwise the motion is denied.

**IT IS FURTHER RECOMMENDED** that "Plaintiff Jackson Day School's And Third-Party Defendants Jackson Day School Board Of Directors's And Tammy Winstead's Motion To Dismiss…" (Document No. 70) be **DENIED WITHOUT PREJUDICE**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: August 29, 2025

David C. Keesler
United States Magistrate Judge